## NANCE v. HEMPHILL.

1. The constitution of this State does not prohibit *private banking*, whether it is against the *policy* of this State to permit individuals to engage in the business of private banking, is a question which addresses itself to the Legislative Department of the Government, and which the courts cannot determine.
2. The right of individuals to engage in the business of *private banking* is a common law, right, and may be exercised until forbidden by the Legislature.

Error to the Circuit Court of Bibb County.

THIS was an action of *assumpsit* in the court below brought by the plaintiff in error, as endorsee against the defendant in error, as the drawer of a bill of exchange. The declaration is in the usual form, to which the defendant below pleaded.

1. *Non assumpsit.*

2. Failure of consideration both, in short, by consent, and

3. A plea in the following words:—"and the said defendant for further plea in his behalf saith, acted non, &c. because he says that on the — day of — certain persons unauthorized by law and contrary to the constitution and laws of the State, did subscribe to and become members of an association, institution or company, known and styled the 'Real Estate Banking Company of South Alabama,' at Selma, in the county of Dallas in said State, and did then and there, become proprietors of a bank or fund for the purpose of issuing notes, receiving deposites, making discounts, purchasing bills of exchange, and transacting all other business, which the legally incorporated banks of said State may and do transact, by virtue of their respective charters and acts of incorporation, and that in pursuance of such unauthorized, illegal, and unconstitutional purpose and intent, the said persons afterward, to wit: on the day aforesaid, at Selma, to wit: at the county of Dallas, did establish an office or banking house, and issued notes, received depositse, purchased bills of exchange,

and made discounts; and that the bill of exchange in the decla-
ration, set forth, was made on the day it bears date, to wit: on
&c., at &c., to be offered for sale or discount, to the said banking
company, and with the intent and for the purpose of obtaining a
loan of the notes issued by the banking company upon the same,
and that afterwards, to wit: on the — day of —, at the county
aforesaid, the said bill was presented to the said banking associa-
tion at their banking house at Selma, for sale or discount, and
the said banking company then and there purchased or discounted
the said bill, paying out the notes issued by the said unlawful
banking company, upon the said purchase or discount, and that
said bill of exchange is now the property of said unlawful bank-
ing company, and that said Robert R. Nance, the plaintiff, is
but the agent of said unlawful banking company, as the cashier
of said company, that he, the said Nance, has no other or further
interest in said bill than as agent and cashier of said unlawful
banking company. And further, that the said several endorsers
on said bill, endorsed the same, for the purpose and with the in-
tent to have the same sold or discounted by said unlawful bank-
ing company, by means of all which, and by force of the con-
stitution and laws of the State, the said bill of exchange and the
said endorsements thereon, so made by the defendant and so en-
dorsed as in said declaration mentioned, were and are void and
of no force or effect in law, and this the said defendant is ready
to verify, therefore, he prays judgment," &c.

Upon the first and second pleas the plaintiff took issue in fact,
and demurred to the third plea, which being overruled by the
court; he filed to the third plea the following replication.

And the plaintiff as to the third plea of the said defendant by
him above pleaded says *precludi non* because he says he is not
the agent of certain persons, members of an illegal, unconstitu-
tional bank, carrying on the business of banking against the laws
and constitution of the State of Alabama; and that the said bill
of exchange is not now, nor was at the time of the commence-
ment of this suit, nor before nor after, the property of such un-
lawful banking company, as the said defendant in his said plea

Nance v. Hemphill.

his said plea hath alleged, but the said bill of exchange is and was his at the time of the commencement of this suit, as he has alleged in his declaration, wherefore he prays judgment, &c.

The defendant having taken issue on this replication, a verdict was found for him, and judgment rendered accordingly.

A bill of exceptions was taken during the trial of the cause from which it appears that upon the trial, the defendant attempted to shew by parol testimony, the existence of a company or association known and styled the "South Alabama Real Estate Banking Company," at Selma; that it was disclosed that there was written evidence of the association, thereupon the plaintiff moved the court to exclude such parol testimony as secondary evidence, which the court refused.

In the argument of said cause the court ruled that having overruled the plaintiff's demurrer, the argument on the law was thereby concluded, and that the plaintiff must confine his argument to the facts of the case. The plaintiff, by his counsel, moved the court to instruct the jury—

1. That before the passage of the act of 1838, individuals had a right at common law, to do a banking business, not contravened by any act of the Legislature of the State or of the constitution.

2. That a contract made with individuals thus associated, is not *ipso facto* void.

3. That a contract made with a company of individuals associated for banking purposes, which wants only a legislative creation and not forbidden by law, is not *ipso facto* void.

4. That such individuals so associated and banking, may sue and recover their notes: which instruction the court refused to give; to which the plaintiff excepted—and now assigns for error, the matters of law arising out of the overruling the demurrer to the third plea, and the refusal to charge as shown by bill of exceptions.

PECK and EDWARDS, for the plaintiff in error.
PHELAN, contra.

ORMOND, J.—The questions of law presented on this record and argued by counsel, are—

70

1. Is private banking, in the common acceptation of that term, prohibited by the constitution of this State.

2. Is it a common law right.

It is most obvious that the design of the written constitutions of government in the States of this Union, was to limit and define the *quantum* of, power which the people, in their sovereign capacity, consented to part with, for the purposes of civil government. It is not the object of these instruments to act on individuals, unless they become invested with the powers delegated by the constitution. The manifest design, was to secure to the people, all their rights not necessarily parted with, to accomplish the object in view—the establishment of civil government. It would, therefore, be very strange, if a provision should be found incorporated in any of them, having for its object the restraint of the citizen as such, and not invested with power under the constitution.

But when we come to the examination of that portion of the constitution of this State, relied on to support the proposition, that private banking is forbidden to the citizen, it is most manifest, that such was not the intention of the framers of the constitution. It reads thus:

"*Establishment of Banks.*—One State Bank may be established, with such number of branches as the General Assembly may, from time to time, deem expedient: *Provided*, That no branch bank shall be established, nor bank charter renewed, under the authority of this State, without the concurrence of two thirds of both branches of the General Assembly; *And provided, also*, That not more than one bank nor branch bank shall be established, nor bank charter renewed, at any one session of the General Assembly, nor shall any bank or branch bank be established, or bank charter renewed but in conformity with the following rules.

"1. At least two fifths of the capital stock shall be reserved for the State.

"2. A proportion of power in the direction of the bank shall be reserved to the State, equal at least to its proportion of the stock therein.

" 3. The State, and the individual stockholders, shall be liable, respectively, for the debts of the bank, in proportion to their stock holden therein.

" 4. The remedy for collecting debts shall be reciprocal, for and against the bank.

" 5. No bank shall commence operations until half of the capital stock subscribed for, shall be actually paid in gold and silver, which amount shall, in no case, be less than one hundred thousand dollars.

" 6. In case any bank or branch bank shall neglect or refuse to pay, on demand, any bill, note, or obligation, issued by the corporation according to the promise therein expressed, the holder of any such note, bill, or obligation, shall be entitled to receive and recover interest thereon until the same shall be paid, or specie payments are resumed, by said bank, at the rate of twelve per cent. per annum, from the date of such demand, unless the General Assembly shall sanction such suspension of specie payments; and the General Assembly shall have power, after such neglect or refusal, to adopt such measures as they may deem proper, to protect and secure the rights of all concerned, and to declare the charter of such bank forfeited.

" 7. After the establishment of a general State bank, the banks of this State now existing may be admitted as branches thereof, upon such terms as the Legislature and the said banks may agree, subject, nevertheless, to the preceding rules."

If, as maintained by the counsel for the defendant in error, the design of the provisions just cited, was to restrain private banking, as well as to prohibit the Legislature from granting bank charters, except on the conditions expressed, no language can well be conceived more inappropriate to accomplish the object. Not only is the provision by its very terms, confined to the action of the Legislature in the creation of corporations, for the purposes of banking, but in all its details it supposes the existence, in future, of such corporations, and limits and defines their rights, powers, and responsibilities as such, and by the employment of language which is without meaning, unless it be so understood.

There was great reason in this, for an act of incorporation unwisely or improvidently granted, would be beyond the reach of future legislation, whilst private banking, if it become an evil could at all times be arrested by an ordinary act of legislation.

There being no constitutional prohibition of private banking, I proceed to the enquiry whether it is a common law right.

The term "banking" does not necessarily include the circulation of notes, or securities as a currency or medium of exchange, but it is in that sense, we must consider it: as it is because, the Selma company issued their notes, and circulated them as the incorporated banks of the State, were by law authorized to do, that this transaction is considered illegal.

It may be assumed as certain, that by the common law, what it is lawful for a single individual to do, may be done by several persons associated together. Would then an individual have the right at common law, to make his notes payable to bearer and use them in the discount of the notes of other persons, or in the purchase of bills of exchange? It will not be contended that thus far the transaction would be illegal, but it is insisted that as it is the design of the banker, that his notes shall enter into the circulation and pass from hand to hand as money, this illegal design will vitiate the contract.

It is certainly one of the highest duties of the sovereign power, to control and regulate the currency of the country, and if the notes of private bankers should so far enter into the circulation, as to become prejudicial to the community, it would doubtless, be the duty of the Legislature, either to suppress private banking altogether, or to require adequate pledges for the redemption of the notes; but until this is done, it is not easy to perceive how such a transaction can be considered illegal.

Private banking has always been tolerated in that country where the common law had its origin. In their commencement, these banks "received money on deposit, managed the money affairs of States and individuals, lent money to such as could give the necessary security, and bought and sold bills of exchange, and bullion coin." By degrees, as they obtained the confidence

Nance v. Hemphill.

of the country, they issued their own notes, which entering into the circulation as money, passed according to the credit of the banker.    There is at this day, a multitude of these banks in that country, and the only restraint, so far, I am informed, which Parliament has imposed on them, is, that no more than six persons shall constitute a firm for a bank of circulation.    This measure has been attributed to the hostility of the Bank of England to these institutions.

In the case of the Bank of Augusta v. Joseph B. Earle in the Supreme Court of the United States, the Chief Justice in delivering the opinion of the court, says: "The institutions of Alabama like those of the other States, are founded on the great principles of the common law, and it is very clear that at common law the right of banking in all its ramifications, belonged to individual citizens, and might be exercised by them, at their pleasure."    [See also New York Firemen's Insurance Company, 2 Cowen Rep. 710.]

In the case of Bristol v. Barker, 14 Johnson's Rep. 207, it was held that an act of the Legislature forbidding the association of persons together, for the purpose of issuing notes, &c. or transacting the usual business of incorporated banks, did not apply to an individual carrying on the business of banking.    [See also the case of the Utica Insurance Company, 15 Johns. Rep. 381: and the case of the Manhattan Company, 9 Wendell 351.]

There cannot, therefore, be any doubt that private banking is a common law right.

It is, however, said in argument, that if private banking is not expressly prohibited by the constitution of this State, yet as the State has reserved to itself the privilege of banking, either alone, or in connection with individual citizens, it is, therefore, against the policy of the State to permit the exercise of this right in any other mode.

It may be true, that as the State has engaged in the business of banking, it is good policy to exclude from competition, private bankers, but this the Legislature can alone declare.    A great many considerations must enter in to the solution of that ques-

tion, which the legislative department, is alone competent to determine.

This will be evident when we consider, that what would be for the interest of the State in such a case, or in other words, what course sound policy would dictate, must always be a question of expediency, depending on the extent to which the State might think it proper, to engage in the business of banking, and a variety of other facts, varying at different times and fluctuating and uncertain in their character. It is too obvious, therefore, to require further illustration or argument, that the judicial tribunals, whose province it is to pronounce on fixed and settled rules of action, have no power to determine such questions.

Issue having been taken on the plea after the demurrer was overruled, the same questions of law which have been here discussed, together with some others, were again presented on, motion to charge the jury. The views here taken of the law arising on the demurrer to the plea, apply also to the charges of the court, and as the question on the demurrer to the plea covers the whole ground, it is not necessary to express any opinion on other questions of law made in the case.

As, therefore, there was no statute of this State, prohibiting private banking, in force at the time of the purchase of the bill in question, by the " Real Estate Banking Company of South Alabama," the judgment of the court should have been for the plaintiff in error, on the demurrer to the plea; and for that error, the judgment must be reversed and the cause remanded.