In the Matter of the Application of a Majority of the Directors of the MURRAY HILL BANK for a Voluntary Dissolution of said Bank.

1. INSOLVENT BANK IN HANDS OF STATE SUPERINTENDENT — PROCEEDING BY DIRECTORS FOR VOLUNTARY DISSOLUTION. After the state superintendent of banks has taken possession of the assets of an insolvent banking corporation with the intention of having an action brought by the attorney-general to dissolve the same, the directors cannot anticipate such action on the part of the state by instituting a proceeding for voluntary dissolution.

2. PREDOMINANCE OF ACTION BY ATTORNEY-GENERAL OVER PROCEEDING BY DIRECTORS. When the directors of an insolvent banking corporation have commenced a special proceeding for voluntary dissolution under the Code of Civil Procedure (§§ 2419–2431) after the superintendent of banks has taken possession of the property and business of the corporation, an action for involuntary dissolution instituted by the attorney-general in the name of the People under the Banking Law (L. 1892, ch. 689) and the Code of Civil Procedure (§§ 1785–1795), although begun after the special proceeding, takes priority.

3. PREDOMINANCE OF LATER SPECIAL STATUTE OVER EARLIER GENERAL STATUTE. So far as the Banking Law (L. 1892, ch. 689), being a special and later statute applying to banking and kindred corporations only, is necessarily inconsistent with the general and earlier statute regulating the voluntary dissolution of corporations generally (Code Civ. Pro. §§ 2419–2431), the provisions of the former are paramount.

4. RECEIVER. The command of the Banking Law (§ 17), that the superintendent of banks shall retain possession of the property and business of insolvent banking corporations until the termination of the action instituted by the attorney-general, deprives even the courts of power to disturb that possession through a receiver appointed in a proceeding independent of that instituted by the attorney-general.

*Matter of Murray Hill Bank*, 14 App. Div. 318, 629, affirmed.

(Argued April 28, 1897; decided June 8, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 5, 1897, reversing an order of Special Term which dissolved a banking corporation, and also dismissing a proceeding instituted for the voluntary dissolution of said bank.

On the 11th of August, 1896, the superintendent of the

banking department, considering a banking corporation, known as the Murray Hill Bank, to be in an unsound and unsafe condition to do banking business, closed its doors and took possession of its property.

He at once caused an examination to be made into the affairs of the bank and discovered that it was insolvent. Its capital of $100,000 was exhausted and there was a deficiency of about $260,000. Thereupon he directed the attorney-general to institute proceedings for the dissolution of the bank and the appointment of a receiver, " but at the request of the officials and a portion of the directors of the said bank he requested the said attorney-general to defer the commencement of such action or proceeding for a ,reasonable time, it being claimed by said officials of said bank that if an opportunity were afforded them they could restore the impairment of the capital of the bank and place its affairs in such a condition that it would be safe and expedient for it to continue business." Without the knowledge of the superintendent of banks, and without consultation with him, the directors and officials availed themselves of the delay to prepare a petition and schedules for the voluntary dissolution of said bank. The preparation of the petition and schedules, which were very long, involved considerable time. The petition was verified by the directors on the 26th, 27th and 28th of August, and on the day last named was filed and an order based thereon was issued requiring the attorney-general to show cause at a Special Term of the Supreme Court in the city of New York on the first of September, 1896, why the usual order should not be made as required by section 2423 of the Code of Civil Procedure. The attorney-general opposed the application upon the various grounds involved in this appeal, and presented affidavits showing the foregoing facts in substance. In an affidavit made by the bank superintendent on Monday, August 31, 1896, that officer stated that he had " repeatedly informed the president of said bank and others in interest that he would report the facts in the case to the attorney-general, who would apply for the appointment of a receiver ; that no objection was there-

upon made to this proposition by said president or anybody in interest; that on Thursday last deponent saw and had a conversation with the president of said bank, and then informed him that he would immediately make his report to the attorney-general, so that the attorney-general could make application for the appointment of a receiver; that no objection was then made by said president to such a course; * * * that said president did not inform deponent of this proceeding, and deponent did not know that this application was to be made, and knew nothing of it until the 29th inst." The attorney-general insisted that the directors of an insolvent bank, the assets of which had been taken possession of by the superintendent of the banking department, had no right to institute proceedings for voluntary dissolution, or to take the assets out of the hands of the superintendent, but his objections were overruled and an order was made, returnable on the 10th of December, 1896, requiring all persons interested in the bank to show cause why it should not be dissolved, and appointing Spencer Trask and Miles M. O'Brien temporary receivers. On the 4th of September, 1896, the attorney-general commenced an action in the name of the People to dissolve the bank, the summons being dated August 31, and the complaint verified the same day. On the 11th of September following a motion was made in said action, the venue of which was laid in the county of Kings, for the appointment of temporary receivers, and Benjamin B. Odell, Jr., and Edward H. Hobbs were appointed accordingly, and the bank superintendent transferred to them the assets of the bank. Subsequently the bank served an answer, which, on the 3rd of October, 1896, was stricken out by an order made at Special Term as frivolous, and judgment was directed for the relief demanded in the complaint. On the 12th of October proof was taken at Special Term as to the material allegations of the complaint, but before judgment was entered proceedings in the action were stayed until the hearing and determination of an appeal taken from the order striking out the answer. That appeal, together with one taken from the order appointing temporary receivers in the

action, was decided on the 20th of November, 1896, the former being affirmed, but the latter reversed. The usual orders were entered and November 24th final judgment was rendered in the action, dissolving the corporation, adjudging that its corporate rights, privileges and franchises were forfeited, and appointing Messrs. Odell and Hobbs permanent receivers. Subsequently, upon motion of the bank, the Appellate Division resettled its order of affirmance, so as to provide that the defendant's answer should be overruled as frivolous, and that the plaintiff should have judgment only for the dissolution of the corporation without the appointment at that time of permanent receivers, but that the plaintiff or the attorney-general might apply at the foot of the judgment for the appointment of permanent receivers if an order should be entered in the special proceeding to dissolve the corporation, directing that it be discontinued or dismissed. On the twelfth of December the final judgment of dissolution was amended, so as to conform to the amended order of the Appellate Division and to provide for the dissolution of the defendant and the forfeiture of its franchises. It also contained the usual injunction restraining the bank, its directors, managers and officers from exercising any of the corporate franchises, powers, rights or privileges. Upon the return day of the order to show cause in the special proceeding a referee was appointed, and, subsequently, the usual testimony was taken. The judgment roll in said action brought by the People against the bank was put in evidence, and the referee in his report found the facts relating to the history of that action which resulted in such judgment, but recommended that the bank should be dissolved by a final order in the usual way, although it had already been dissolved by final judgment entered as aforesaid. On the 19th of December, 1896, the Special Term confirmed the report, adjudged the dissolution of the bank and appointed Messrs. Trask and O'Brien permanent receivers, notwithstanding the opposition of the attorney-general, based upon various grounds, and, among others, that, as the corporation had already been dissolved in the action,

there was no power to continue the special proceeding, and that the same had abated by the entry of said judgment. On the 21st of December, 1896, an order was made, on notice in the special proceeding, directing Hobbs and Odell to transfer the assets of the bank, received by them upon their appointment as temporary receivers in the action of the attorney-general, to Trask and O'Brien, the receivers appointed herein, and shortly thereafter they turned over the assets accordingly. The People, through the attorney-general, appealed to the Appellate Division of the first department from the final order of dissolution, made as above stated in this proceeding, and gave notice of a desire to review on such appeal the order of the Special Term, made herein on the second of September, 1896, which, among other things, appointed Trask and O'Brien temporary receivers. Notice was also given of a desire to review the order made in this proceeding appointing those gentlemen permanent receivers of the bank. A like appeal was brought by the attorney-general in his official name, and also by Mr. Kilburn, as superintendent of banks. Upon the hearing of said appeals, the Appellate Division of the first department reversed the order dissolving the corporation, made in the special proceeding, and dismissed the proceeding itself. From the order of the Appellate Division the directors of the bank did not appeal, but Messrs. Trask and O'Brien, the receivers appointed in the special proceeding, and a committee of depositors of the bank, appealed to this court.

*Louis Marshall* and *Samuel Untermyer* for appellants. The appellants, the committee of depositors of the Murray Hill Bank, and Messrs. Trask and O'Brien, the receivers appointed in the voluntary proceedings, have a standing in court to review the order dismissing these proceedings. (*People* v. *R. B. I. Co.*, 28 Hun, 356; Code Civ. Pro. §§ 2423, 2428; *Atty.-Genl.* v. *N. A. L. Ins. Co.*, 77 N. Y. 297; *Hotchkiss* v. *Platt*, 7 Hun, 56; 66 N. Y. 620; *Hobart* v. *Hobart*, 86 N. Y. 636.) The Supreme Court for the first

judicial district had ample power to entertain jurisdiction of proceedings for the voluntary dissolution of the corporation, instituted by a majority of its directors. (Code Civ. Pro. §§ 1793, 2419, 2420, 2423.) The fact that the superintendent of banks had, pursuant to section 17 of the Banking Law, taken possession of the assets of the Murray Hill Bank, did not prevent the Supreme Court from exercising the powers conferred by title 11, chapter 17 of the Code of Civil Procedure. (*Rockwell* v. *Nearing*, 35 N. Y. 302; *Taxtor* v. *Porter*, 4 Hill, 140; *Stuart* v. *Palmer*, 74 N. Y. 183; Const. N. Y. art. 6, § 1; *De Hart* v. *Hatch*, 3 Hun, 375; *People ex rel.* v. *Nichols*, 79 N. Y. 582; *State* v. *County of Kings*, 125 N. Y. 312.) Even assuming that the schedules are in some respects incomplete, they are in substantial conformity with the requirements of the Code of Civil Procedure, and even if defective would not impair the validity of the proceedings. (Code Civ. Pro. §§ 2421, 2427; *In re S. E. S. M. Co.*, 4 N. Y. Supp. 174; 115 N. Y. 657; *In re C. J. Co.*, 128 N. Y. 550.) The judgment in the attorney-general's action, providing for the dissolution only of the Murray Hill Bank, does not operate as an abatement of these proceedings or impair the power of the court to make the order appealed from. (*McCulloch* v. *Norwood*, 58 N. Y. 562; *Sturges* v. *Vanderbilt*, 73 N. Y. 384; *People* v. *K. L. Ins. Co.*, 106 N. Y. 619; Code Civ. Pro. §§ 2423, 2426, 2429; *Platt* v. *Archer*, 9 Blatchf. 559; 5 Thomp. on Corp. § 6727; *Marstaller* v. *Mills*, 143 N. Y. 398; *Rodgers* v. *A. F. Ins. Co.*, 148 N. Y. 34; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 92 N. Y. 353; *Snyder* v. *Snyder*, 96 N. Y. 88; *People* v. *T. S. & I. Co.*, 82 Hun, 303; *People* v. *U. L. Ins. Co.*, 17 N. Y. Wkly. Dig. 563; *People* v. *S. L. G. & W. Co.*, 52 Hun, 174.) The order made herein, on December 21, 1896, denying the attorney-general's motion to discontinue these proceedings, on account of their abatement, which has never been appealed from and stands unreversed, is a bar to the respondent's contention that these proceedings have been abated. (*Farmers' Bank* v. *Cowan*, 2 Abb. Ct. App. Dec. 88; *Robert* v. *Good*,

36 N. Y. 408; *Stilwell* v. *Carpenter*, 62 N. Y. 639; *Porter* v. *Waring*, 69 N. Y. 255; *Dunford* v. *Weaver*, 84 N. Y. 445; *Day* v. *Town of New Lots*, 107 N. Y. 148; *Dunham* v. *Townshend*, 118 N. Y. 286; *Dwight* v. *St. John*, 25 N. Y. 203; *Brown* v. *Balde*, 3 Lans. 283; *Foreman* v. *Edwards*, 14 N. Y. Wkly. Dig. 408; *Riggs* v. *Pursell*, 74 N. Y. 370.) The claim of the attorney-general, that under section 1793 of the Code it was the duty of the court to have provided, in the action brought by him, for a just and fair distribution of the property of the corporation, and that, therefore, the court cannot in any other proceeding make provision to that effect, is entirely unfounded. (Code Civ. Pro. § 1793.) The effect of the decision of the Appellate Division of the second department was to stay proceedings in the action brought by the attorney-general until the determination of the voluntary proceedings, either by a distribution of the assets of the Murray Hill Bank or by a discontinuance or dismissal of such proceedings. This the court had unquestionably the power to do. (Code Civ. Pro. §§ 537, 1317; *Fischer* v. *Blank*, 138 N. Y. 669; *S. S. Bank* v. *S., C. & N. Y. R. R. Co.*, 88 N. Y. 110; *Folger* v. *Fitzhugh*, 41 N. Y. 228; *Briggs* v. *Bergen*, 23 N. Y. 162; *Strong* v. *Sproul*, 53 N. Y. 497; *Burrall* v. *Moore*, 5 Duer, 654; *Smith* v. *Rathbun*, 88 N. Y. 660.) The Murray Hill Bank being insolvent, Messrs. Trask and O'Brien, as the receivers first appointed, became vested with the title, right of possession and administration of the corporate property in preference to any other receiver, and such right was not subject to divestiture by the dissolution of the corporation. (*Osgood* v. *Maguire*, 61 N. Y. 524; *People* v. *C. C. Bank*, 53 Barb. 412; *In re S. S. T. B. Co.*, 136 N. Y. 169; *In re C. J. Co.*, 128 N. Y. 554; *Richmond* v. *Irons*, 121 U. S. 27; *Irons* v. *Mfrs. Bank*, 6 Biss. 301; *Nealis* v. *A. T. & I. Co.*, 150 N. Y. 42; *Ex parte Chetwood*, 165 U. S. 443.)

*T. E. Hancock, W. E. Kisselburgh* and *John M. Bowers* for respondents. The directors of a bank, whose business and property have been taken possession of by the bank

superintendent, are not authorized to apply for a voluntary dissolution. (Code Civ. Pro. §§ 217, 1785 ; L. 1882, ch. 409, § 17 ; L. 1892, ch. 689, §§ 17, 18 ; L. 1890, ch. 429 ; *Magee* v. *G. A.*, 17 N. Y. S. R. 221 ; *In re Mart*, 22 Abb. [N. C.] 227 ; *In re Boyton* v. *S. F. Co.*, 6 Civ. Pro. Rep. 342 ; *Chamberlain* v. *R. S. P. V. Co.*, 7 Hun, 557 ; L. 1889, ch. 289 ; L. 1890, ch. 313.) The judgment entered in the county of Kings, in the suit brought by the People of the State of New York against the Murray Hill Bank, abated the special proceedings. (Morawetz on Corp. § 1031 ; *McCulloch* v. *Norwood*, 58 N. Y. 562 ; *Sturges* v. *Vanderbilt*, 73 N. Y. 384 ; *People* v. *K. L. Ins. Co.*, 106 N. Y. 619 ; *Nat. Bank* v. *Colby*, 21 Wall. 609 ; *Rogers* v. *A. F. Ins. Co.*, 148 N. Y. 34 ; *Mumma* v. *Potomac Co.*, 8 Pet. 286 ; *Hollingshead* v. *Woodward*, 107 N. Y. 96 ; *People* v. *N. R. S. R. Co.*, 121 N. Y. 582.) The judgment entered in the county of Kings, in the suit brought by the People of the state against the Murray Hill Bank, ended its corporate life, and that judgment barred the further prosecution of this voluntary proceeding. (*Livingston* v. *Gibbons*, 4 Johns. Ch. 571 ; *C. & O. C. Co.* v. *B. & O. R. R. Co.*, 4 G. & J. 121 ; *McCleskey* v. *State*, 4 Tex App. 322 ; *Dickinson* v. *Eichhorn*, 78 Iowa, 710 ; *Ferrer's Case*, 6 Coke, 7 ; *Plicque* v. *Perret*, 19 La. 328 ; *Paul* v. *Virginia*, 8 Wall. 181 ; 3 Kent's Comm. 458 ; *People* v. *Utica Ins. Co.*, 15 Johns. 387 ; *B. Bridge Case*, 3 Wall. 51, 73 ; *W. R. Co.* v. *Reid*, 13 Wall. 266 ; 1 Black. Comm. 404 ; 2 Kyd on Corp. 477, 478 ; *People* v. *K. & M. T. R. Co.*, 23 Wend. 205.) The fact that the judgment entered in the county of Kings, in the suit brought by the People of the state against the Murray Hill Bank, did not direct distribution of the corporate assets is absolutely immaterial so far as the effect of such judgment of dissolution upon this proceeding is concerned. (Code Civ. Pro. § 1793 ; *Van Tassel* v. *Wood*, 76 N. Y. 614 ; *Hewlett* v. Wood, 67 N. Y. 394 ; *D. U. S. C. Co.* v. *D. T. Co.*, 84 N. Y. 153.) The people, the attorney-general and the superintendent of banks had the right to prosecute an appeal from the order of final dissolution to the Appellate Division

of the Supreme Court. (L. 1883, ch. 378, § 8; *People* v. *S.
N. Bank,* 77 Hun, 159; *People* v. *S. L. G. & W. Co.*, 52
Hun, 180.) Neither the receivers in the voluntary dissolu-
tion, nor the appellants, the committee of depositors, have a
standing to prosecute this appeal. They are not persons
aggrieved. (*Bryant* v. *Thompson,* 128 N. Y. 426; *People
ex rel.* v. *Lawrence,* 107 N. Y. 607; *Hyatt* v. *Dusenbury,* 8
N. Y. S. R. 713; 106 N. Y. 663; *A. & P. T. Co.* v. *B. &
O. R. R. Co.*, 87 N. Y. 355; *People ex rel.* v. *Lynch,* 54 N.
Y. 681; *Ross* v. *Wigg,* 100 N. Y. 243; *S. F. Co.* v. *Burr,*
13 Misc. Rep. 51; *Connor* v. *Belden,* 8 Daly, 257; *In re
Hodgman,* 140 N. Y. 430; *People ex rel.* v. *Common Coun-
cil of Troy,* 82 N. Y. 575.)

VANN, J. The Appellate Division based its determination
upon the ground that the proceeding for a voluntary dissolu-
tion of the Murray Hill Bank, instituted by its directors, abated
upon the entry of a judgment dissolving said corporation in the
action brought by the attorney-general. We think this is a
sound conclusion, and that it is so well supported by the reason-
ing of the learned justice who prepared the prevailing opinion
as to make further discussion of the subject unnecessary. (14
App. Div. 318.) We should affirm the order now before us
for review upon that opinion, but for the fact that it recog-
nizes as settled law the doctrine that, after the superintendent of
banks has taken possession of the assets of an insolvent banking
corporation with the intention of having an action brought by
the attorney-general to dissolve the same, the directors may
anticipate such action on the part of the state, by instituting a
proceeding for voluntary dissolution, and that both the action
and the proceeding, although each has the same end in view,
may be carried on together. (*People* v. *Seneca Lake Grape
& Wine Co.*, 52 Hun, 174; *Matter of Murray Hill Bank,*
9 App. Div. 546.) The attorney-general attacks this position
with great earnestness, and as the question was fully argued
before us, and as, after due consideration, we have reached a
different conclusion from that announced by the Supreme

Court upon the subject, it is proper that we should briefly state our reasons therefor.

Title eleven of chapter seventeen of the Code of Civil Procedure, embracing sections 2419 to 2432, provides for the voluntary dissolution of a corporation upon the petition of a majority of the directors, not only when it has become insolvent, but also when, " for any reason, they deem it beneficial to the interest of the stockholders that " it " should be dissolved. " (§ 2419.) Upon the presentation of the petition, duly verified, with schedules showing the financial condition of the corporation, the names of its creditors and the like, the Supreme Court, at any Special Term held in the judicial district where the principal office of the corporation is located, may issue an order requiring all persons interested to show cause, not less than three months thereafter, why it should not be dissolved. A temporary receiver may be appointed at any stage of the proceeding, on notice to the attorney-general and satisfactory evidence that the corporation is insolvent. Due provision is made for notice to creditors and stockholders, and upon the return day of the order to show cause the proofs and allegations of the parties are heard by the court or by a referee appointed for the purpose, and, if it appears that the corporation is insolvent, or that " for any reason a dissolution of the corporation will be beneficial to the interests of the stock-holders " and " not injurious to the public interests, the court must make a final order dissolving the corporation and appointing one or more receivers of its property." This part of the Code took effect on the first day of September, 1880, and apparently applies to all corporations, except library societies, religious corporations, educational institutions and " municipal or other political " corporations, which are expressly excepted. (§§ 2431, 3356.) The proceeding now before us was instituted and carried on under this statute.

The Banking Law, now in force in this state, is a part of the general revision of the statutes, and was passed in 1892. (L. 1892, ch. 689.) It provides for the incorporation, prescribes the powers and regulates the management of banks of

discount, savings banks, trust companies, building and mutual loan corporations, co-operative loan associations, mortgage, loan and investment corporations and safe deposit companies. It makes all these corporations, as well as individual bankers, subject to the inspection and supervision of an officer known as the superintendent of banks, who is appointed by the governor and confirmed by the senate. He is required, either personally or through examiners appointed by him, to " visit and examine every such corporation and individual banker * * * at least once in each year," except that the visitation of savings banks need be but once in two years, and he has power to make an examination of any bank whenever in his judgment it is necessary and expedient. For the purpose of such examination he and his examiners are empowered to administer oaths and compel the attendance as a witness of any person whose testimony may be required. (§ 8.) Whenever he has "reason to believe" that the capital stock of any banking corporation or individual banker has become impaired the statute commands him to require the deficiency to be made good, and, unless his direction is obeyed by the directors and stockholders within sixty days, he is to report the fact to the attorney-general, who is thereupon charged with the duty of taking such action as is authorized in the case of insolvent corporations. It is further provided that, "if, from any such examination or report, the superintendent shall have reason to conclude that any such bank or individual banker is in an unsound or unsafe condition to do banking business, he may forthwith take possession of such bank or individual banker's property and business and retain such possession until the termination of the action or proceeding instituted by the attorney-general." (§ 17.) The next section makes it the duty of the attorney-general, upon receipt of notice from the bank superintendent that it is unsafe and inexpedient for the corporation to continue business, to " institute such proceedings against the corporation or banker as are authorized in the case of insolvent corporations, or such other proceedings as the nature of the case may require."

27

The power of the attorney-general in the premises, after such notice, is regulated by the Code of Civil Procedure, which authorizes him to commence an action in the name of the People to dissolve corporations generally under certain circumstances, and if the corporation " has banking powers" to commence such an action whenever " it becomes insolvent or unable to pay its debts, or has violated any provision of the act by or under which it was incorporated, or any other act binding upon it." (§§ 1785, 1786.) Provision is made for the appointment of temporary and permanent receivers with the usual powers. (§ 1788.) The final judgment rendered in such an action not only dissolves the corporation and forfeits its corporate rights, privileges and franchises, but also, when the stockholders and directors are parties, adjudges that each shall pay into court any sum for which he may be liable by law or so much thereof as is necessary to satisfy the debts of the corporation. (§§ 1785, 1793, 1795.)

The action of the bank superintendent in taking possession of " the property and business" of the Murray Hill Bank, and of the attorney-general in commencing a suit to dissolve the same, was founded upon the Banking Act and said provisions of the Code relating to the involuntary dissolution of corporations.

Thus it appears that the special proceeding, commenced by the directors to dissolve the bank, was based upon a general act passed in 1880, applying to substantially all corporations, while the action commenced by the attorney-general, although regulated by the Code, was based upon a special act, applying to banking and kindred corporations only, passed in 1892. (L. 1880, ch. 178; L. 1892, ch. 689.) The precise question presented for decision is whether the action, although begun after the special proceeding, took priority thereto owing to the possession taken by the bank superintendent of " the property and business" of the bank, with authority to retain possession thereof until the termination of the action brought by the attorney-general in the name of the People.

So far as the special and later statute is necessarily incon-

sistent with the general and earlier statute, the provisions of the former are paramount. (*Townsend* v. *Little*, 109 U. S. 504; *Titcomb* v. *Union, &c., Ins. Co.*, 8 Mass. 326; *Isham* v. *Bennington Iron Co.*, 19 Vt. 230; *Crane* v. *Reeder*, 22 Mich. 322; *The State ex rel. Fosdick* v. *Perrysburg*, 14 Ohio St. 472; *London, C. & D. R. Co.* v. *Wandsworth Board of Works*, L. R. [8 C. P.] 185; Dwarris on Statutes, 513, 668.)

In order to avoid a repeal by implication, which is not favored by the courts, the later act, or the particular provision is regarded as an exception to the earlier statute or the general provision. Thus, a learned author says, that the later statute " is regarded as modifying the earlier in some particular respect, or taking certain things out of its operation." (Endlich's Interpretation of Statutes, § 215.) "If there are two acts," he continues, " or two provisions in the same act, of which one is special and particular and clearly includes the matter in controversy, whilst the other is general and would, if standing alone, include it also, and if, reading the general provision side by side with the particular one, the inclusion of that matter in the former would produce a conflict between it and the special provision — it must be taken that the latter was designed as an exception to the general provision, as where an incorporation law contains provisions regulating the bringing of actions against corporations created under it, at variance with earlier provisions upon the subject of suits against corporations generally." (Id. § 216.)

As the statutes under consideration are not co-extensive and do not both cover the same subject-matter, there can be no such pervading inconsistency between them as to indicate an intention to repeal. One is a general practice act regulating the voluntary dissolution of corporations generally and authorizing the appointment of a receiver to take possession of the property. The other authorizes the incorporation of a particular kind of corporation, places them under the supervision of a special officer and permits him, under certain circumstances, to take possession of the property and hold it until another officer institutes legal proceedings to dissolve the cor-

poration and distribute its assets.   The inconsistency between the statutes is confined to the possession of the property, for the custodian of the state and the receiver appointed at the instance of the directors, cannot both be in possession at the same time.   One, therefore, must yield possession to the other.   The right of the superintendent must be superior to that of the receiver, or *vice versa*.   According to the authorities cited, it seems clear that the later and special provision must control the earlier and general provision, to the extent of excepting the former from the operation of the latter. This, we think, was the purpose of the legislature.   By the Banking Law it confided summary power to the superintendent of banks to temporarily sequester the property of the bank and take it into his possession for the protection of the public, in anticipation of , action by the attorney-general through the courts for its sale and distribution.   The command was that when a bank, upon due examination, should be found in an unsound or unsafe condition to do banking business, the superintendent might not only take possession of its property, but he could also retain such possession during the continuance of the action commenced by the attorney-general. The object of this unusual power is to preserve the property for the purpose of administration under the Banking Law and the provisions of the Code.   The superintendent is made the statutory custodian until either the capital is restored by the voluntary action of the directors and stockholders, or proceedings *in invitum* are taken by the attorney-general.   It is unreasonable to suppose that the legislature, after committing possession of the property to its special officer and pointing out the way, through the suit of the attorney-general, for that possession to ripen into a complete settlement of the affairs of the bank, intended to allow him to be deprived of that possession, and to permit the bank to be wound up through a proceeding instituted by those presumptively responsible for its downfall, and who, apparently, failed to discover its insolvency, bad as it was, until the superintendent had closed its doors.

The action is a continuation or supplement to the seizure

by the superintendent, and is a part of a comprehensive plan devised by the legislature to close up the bank. The superintendent cannot retain possession, except for a limited period, without notifying the attorney-general to proceed, and upon receiving such notice it is the duty of that officer to commence the usual proceedings for involuntary dissolution. The stockholders and directors may be made parties to the action and judgment may be recovered therein against them for any sum they are under obligation, for any reason, to pay the bank. (Code Civ. Pro. §§ 1793, 1795.)

The course of the directors in instituting proceedings for voluntary dissolution, when the property of the bank was in the actual custody of the state, whether dictated by selfish interests or not, was certainly in contravention of the general purpose and policy of the Banking Act, because the effect was to deprive a state officer of the possession of the assets which, by command of the statute, were in his hands and which it was his duty to retain. It is of the highest importance that conflicts of jurisdiction in respect to questions arising under the Banking Act should not be permitted, and that the statutes should be so construed as to prevent unseemly struggles for the possession of assets, such as took place in the case of the Murray Hill Bank.

It is urged that if the superintendent of banks cannot be deprived of possession by a temporary receiver appointed in voluntary proceedings he cannot be dislodged by a temporary receiver appointed in involuntary proceedings. We appreciate the difficulty suggested, but the question is not now before us and it may never become of practical importance. If it ever arises for decision, it may be that the word "termination," when construed in connection with those sections of the Code which authorize the attorney-general to proceed against insolvent corporations, may not be held to refer to a final judgment. However that may be, we think that the command to retain possession deprives even the courts of power to disturb that possession through a receiver appointed in a proceeding independent of that instituted by the attorney-general.

Our conclusion is that the reasonable and proper construction of the Banking Law, in connection with those provisions of the Code which relate to the dissolution of corporations, gives priority to the proceedings of the attorney-general, and that the action of the Special Term in appointing receivers in the proceeding commenced by the directors was unauthorized and void.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.