# McDavid *v.* Bank of Bay Minette, *et al.*

*Bill for Injunction and Accounting.*

(Decided June 10, 1915.　69 South. 452.)

1. *Statutes; Title; Banks.*—Acts 1911, p. 88, are not unconstitutional as not coming within the title to the act "to create a banking department of the State of Alabama, and through this department to regulate, examine and supervise banks and banking, and to punish certain prohibited acts relating thereto.

2. *Banks and Banking; Liquidation; Power of Superintendent; Statutes; Validity.*—Section 49, Acts 1911, p. 88, is not discriminatory within the equal protection clause of the sixteenth amendment to the Constitution of the United States; nor does it impair the obligations of the contracts within Section 23, Constitution 1901.

3. *Same; Priority of Right.*—Under Acts 1911, p. 50, the superintendant of banks, pursuant to the order of the banking board, has a priority of right in the administration of the assets of a bank drawn into liquidation, and when asserted by him, his rights are superior to those of an assignee of the bank, notwithstanding such assignee has by bill sought the administration of the trust in the chancery court.

4. *Constitutional Law; Discrimination.*—The fact that Section 48, Acts 1911, p. 88, stipulates that the provisions of the act shall not

apply to national banks, does not invalidate the provisions of Section 49 thereof.

5. *Same; Necessity of Examination.*—Unless indispensable to the determination of the litigation, the courts will not decide any constitutional question respecting the validity of legislation.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Joel A. McDavid against the Bank of Bay Minette, and the State Superintendent of Banks, to enjoin such superintendent from interfering with or otherwise handling the assets of the bank, and for an accounting. From a decree denying the injunction, complainant appeals. Affirmed.

B. B. COBBS, and SAMUEL C. JENKINS, for appellant.

ERVIN & McALEER, and CHARLES HALL, for appellee.

GARDNER, J.—The Bank of Bay Minette was organized in 1913. On October 26, 1914, pursuant to a resolution passed by the stockholders of said bank on that day, a deed of assignment was executed in the name of the bank by the vice president thereof to Joel A. McDavid. On November 3, 1914, the board of directors ratified and confirmed said deed of assignment and authorized the vice president and cashier of the Bank of Bay Minette to execute in its name such further conveyances as they might deem proper and necessary, These deeds of assignment were in the usual form made for the benefit of creditors, and the trust was duly accepted by the assignee, McDavid, who filed his bill on November 3, 1914, in the chancery court for administration of the trust. The bill showed that on September 17, 1914, the directors of the Bank of Bay Minette attempted to effect a transfer of all the assets to the Baldwin County Bank in consideration that the

latter pay all the debts of the Bank of Bay Minette,
and that in pursuance of a resolution of the board of
directors the Baldwin County Bank took possession
of all assets of the Bank of Bay Minette. It was fur-
ther alleged that on October 26, at a meeting of the
stockholders, they declined, by resolution to ratify
said transfer and directed that the deed of assignment
be made said McDavid. The board of directors of the
Bank. of Bay Minette subsequently took similar action.
The bill therefore sought an accounting by the Baldwin
County Bank of all the assets of the Bank of Bay
Minette.

On November 11, 1914, the Baldwin County Bank
filed its answer, practically admitting the averments
of the original bill, and that it took possession of the
property under the bill executed pursuant to a resolu-
tion of the board of directors of the Bank of Bay Mi-
nette. It was further alleged, however; that it only held
the possession until November 4th, upon which date
it was notified that the state banking board had taken
possession of the property and assets of the Bank of
Bay Minette, and that in compliance with notification
to that effect it had surrendered to said board all of
said assets. In the third paragraph of the answer
it is alleged, among other things, that prior to the meet-
ing of November 3d, at which time the last deed of as-
signment was executed and the bill in the case filed,
the Bank of Bay Minette had been notified by the state
banking board that it would on November 4th hold a
meeting in Montgomery, and requiring said bank to be
represented at that meeting; and it is alleged that the
action taken by the directors on November 3d was done
in an effort to escape action by the banking board. It is
further alleged that the banking board had not been made

a party to the bill, although the complainants well knew that said board was to hold a meeting on November 4th for the purpose of considering matters in regard to the Bank of Bay Minette, and suggesting that the cause should not further proceed until said banking board was made a party respondent to the bill.

The resolution of the board of directors, dated September 17, 1914, is attached as "Exhibit A" to the answer, and the deed or transfer executed in pursuance of said resolution in the name of the bank is made "Exhibit B." The resolution recites, among other things, the presence of the superintendent of banks at said meeting, and that in fact the meeting had been called by his direction; that, after stating it as his opinion that the Bank of Bay Minette was insolvent and should be liquidated, the said superintendent told the directors that they could accept the proposition of the Baldwin County Bank, or if they preferred they could turn the same over to the banking board for liquidation. The resolution further recites that "the Bank of Bay Minette is in a failing condition and cannot pay its debts." The resolution accepting the proposition of the Baldwin County Bank to pay all its debts in consideration of all its assets was unanimously adopted by the board of directors.

In view of the answer of the Baldwin County Bank, the complainant amended the bill by making the superintendent of banks a party thereto. The amended bill shows the presence of the superintendent at the meeting of the board of directors on September 17th, and that he advised the course pursued by the directors in the transfer. The amended bill further alleges that the superintendent and the agent appointed by him to assist in the matter of the liquidation of the bank

were hostile towards all parties opposing the transfer authorized by the board of directors, and that the directors and stockholders do not desire the said superintendent or his agent to have anything to do with the liquidation of the Bank of Bay Minette. The amended bill further shows that the said superintendent gave notice dated October 27, 1914, to both the vice president and cashier of said bank to appear before the banking board on November 4th and show cause why the said Bank of Bay Minette should not be taken charge of by the banking board as provided by law (Acts 1911, p. 50), which notice was duly served on October 30, 1914.

It is further alleged that the banking board could not lawfully take charge of the assets of said bank because of the insufficient notice, and for the further reason that the act above referred to, under which the said board was proceeding, was unconstitutional and void upon several grounds, and particularly section 49 thereof, in so far as it might tend to show an exclusive authority in the superintendent of banks, or the banking board, in the matter of the liquidation of an insolvent bank.

It is alleged further that the remedy there provided is merely cumulative and does not prevent a bank from making a general assignment for the benefit of its creditors; that as such general assignment had been made previous to the passage of the resolution by the banking board on November 4th, and as this bill had been filed on the day previous, therefore the chancery court had acquired jurisdiction.

The prayer of the original bill was amended by adding the superintendent of banks and his agent as parties thereto, and by asking the court to order the

said superintendent to surrender and deliver to complainant, as administrator, all the assets of the Bank of Bay Minette received by him, and that he and his agent be enjoined by the court from interfering in any manner with the handling said assets.

Upon temporary injunction being sought the chancellor set the same down for hearing, and on the hearing the superintendent of banks offered several affidavits, the tendency of which were to show that for a long time prior to September 17, 1914, the Bank of Bay Minette had not been operating successfully, that its capital had been diminished, and that in fact it showed signs of being in a failing condition. Embraced in some of the affidavits, or accompanying them, are the reports of some of the examiners of the bank. The superintendent himself filed in the cause an affidavit showing the history of the bank from its organization, its condition from time to time, the correspondence had with the cashier of the bank, which as far back as March 11, 1914, showed the capital of the bank impaired and demanding that the deficit be made good. The affidavit of the superintendent shows that he was present in person at Bay Minette, discussing the failing condition of the said bank with all of its officers and members of the board of directors at the time of the transfer to the Baldwin ·County Bank on September 17, 1914, and that all those who in any manner had charge of the business affairs of the bank had full notice that it had to discontinue business, either by a transfer to the Baldwin County Bank, as proposed by it, or by liquidation through the banking board. These affidavits were offered for the purpose of showing that the superintendent of banks and the banking board were sufficently justified in the action taken by them in reference to said bank.

Objection is made on the part of complainant to these affidavits, but we do not think the objection is well taken. Upon the hearing complainant sought an injunction against the superintendent of banks from interfering with the assets of the Bank of Bay Minette, and the bill charged hostility on the part of the superintendent towards the stockholders and, in effect, charged an unnecessary interference on his part with the affairs of said bank. Clearly therefore, under the circumstances, the superintendent was within his rights in offering these affidavits in proof of his good faith, and in justification of his action. The affidavits were not controverted upon the hearing, and it certainly cannot be denied, with any show of reason, that they show full cause for the action taken. It is further shown that the superintendent of banks was acting upon a resolution of the banking board so directing him to take charge of the Bank of Bay Minette, and there was in all respects as to notice, etc., a substantial compliance with the provision of the above-noted act of 1911.

Upon the hearing of the application for a temporary writ of injunction, the chancellor denied the same, and from this order the appeal is prosecuted. Section 4531, Code 1907.

As it appears from this record that the superintendent of banks was justified in his action, such action being in substantial compliance with the statute (Acts 1911, p. 50), the result of this appeal must therefore rest upon the validity of this legislative authority, and the attack here made is directed principally at section 49 of said act, although much of the argument seems to be also intended as applicable to section 10 thereof.

(1)   It is insisted that, if section 49 of the act above referred to grants to the superintendent of banks and the banking board exclusive jurisdiction in cases of this character over the liquidation of the assets of the bank, it is unconstitutional upon several grounds, among them being that it is in violation of that portion of section 45 of our Constitution providing that each law shall contain but one subject and which shall be clearly expressed in its title.   The title of the act in question is.   "To create a banking department of the state of Alabama and through this department to regulate, examine and supervise banks and banking, and to punish certain prohibited acts relating thereto."

Section 49 of said act authorizes the superintendent of banks to institute suits to vacate and annul the charter of any bank, and further stipulates that no suit shall be instituted to vacate the charter of any bank except by the superintendent of banks; and a like provision is made as to the liquidation of a bank. It is further provided that any person may submit to the superintendent any fact which may authorize either form of procedure above referred to, and it is the duty of the superintendent to investigate such facts and to take proper action in the premises.   It is thus seen that section 49 of the act has to deal with the question of liquidation and by what agency the same is to be accomplished.

Similar objection was raised as to section 6 of the act, and the question was presented to this court for determination in the case of *Lovejoy v. City of Montgomery,* 180 Ala. 473, 61 South. 597, wherein it is said: "Our decisions show that this court has interpreted this section in a 'very board and liberal spirit, which is proper, not only because no act should be lightly declared unconstitutional, but also because the general

[McDavid v. Bank of Bay Minette, et al.]

purposes of the section should be kept in view, and it should not be so construed as to operate as an unreasonable restraint on important legislation.   One who formulates the title to an act may make it as broad and comprehensive as he pleases, and the act will be upheld if the matters provided for are referable and cognate to the subject expressed, or, if the matter provided for is not incongruous to the subject, or where all its provisions are allied to the subject expressed, or, as is usually said, germane and cognate to it or complementary to the idea expressed in the title."

A further citation of authority is unnecessary, as we are clearly of the opinion that the provisions of section 49 are germane and cognate to the subject expressed in the title of the act.

It is insisted that if the provisions of said section are to be construed as giving the superintendent of banks a superior authority over the assets, notwithstanding an assignment previously executed, it would be unconstitutional and void, as violative of the fourteenth amendment as to the equal protection of the laws of the state, and also as to due process of law and within the federal and state Constitutions as to impairing the obligation of contracts.   It was also insisted that it is violative of section 10 of the state Constitution as to debarring persons from prosecuting civil suits, and of another provision as to the protection of property rights; and, also, of section 240, as to the right of all corporations to sue and be sued; as well, also, section 238.

To treat in detail each of the objections urged by counsel for appellant would extend this opinion to undue length and subserve no good purpose. Much of the argument, particularly that dealing with the constitu-

tional provision as to due process of law, finds answer in the case of *Montgomery Bk. & Tr. Co. v. Walker,* 181 Ala. 368, 61 South. 951, where, speaking of section 10, it was said that "the act meets the due process requirement of the federal Constitution." We have carefully reviewed this case and find no occasion to depart from the holding there made.

(2, 3) The insistence that the section is an unjust and unwarranted discrimination against the bank and violative of contractual right is, in our judgment, without just foundation. In passing upon the constitutionality of legislative enactment, it must be kept in mind, of course, that the presumption is that all statutes are constitutional, and that he who assails a statute on the ground that it is unconstitutional assumes the burden of vindicating his position beyond a reasonable doubt.— *Lovejoy v. City of Montgomery, supra.* It should also be borne in mind that the equal protection of the law guaranteed by the federal Constitution does not forbid classification.—*Atchison, T. & K. R. R. v. Matthews,* 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909; *Gulf C. & S. F. R. R. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666. In the latter case it was said: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection."

Much of the argument dealing with these constitutional question, lose sight of the fact that the banking business is of a quasi-public nature, and that the in-

timate relation which it bears to the affairs of the people and the revenues of the state clearly bring it within the domain of the internal police powers and make it a proper subject for legislative control. 1 Mechie on Banks & Banking, § 1.

In *State v. Richcreek,* 167 Ind. 217, 77 N. E. 1085, 52 L. R. A. (N. S.) 874, 119 Am. St. Rep. 481, 10 Ann. Cac. 899, it is said: "The right of banking, in all its departments, at common law belonged to the individual citizen, to be exercised at pleasure.　*　*　*　It is unquestionably settled that the sovereign authority of the state may regulate and restrain the exercise of such right"—citing *Nance v. Hemphill,* 1 Ala. 551, *State v. Stebbins,* 1 Stew. 299, and various other authorities.

It was also said in that opinion that: "When the sovereign people of a state, acting through the Legislature, find such police regulation necessary to protect public health, safety, or morals, to prevent fraud or oppression, or to promote the general welfare, the power to act is supreme, subject only to such limitations as are imposed by the fundamental law. The question as to what regulations are proper and needful is primarily for legislative decision, yet, when the police power is used to regulate a business or occupation which in itself is lawful and useful to the community, the courts, if called upon, must determine finally whether such regulations as may have been prescribed are so far just and reasonable as to be in harmony with constitutional guaranties.　*　*　*

"The insistence that the act grants special privileges and immunities is equally untenable. It is manifest that in every regulating statute the precise terms prescribed must be to some extent arbitrary, depending upon the exercise of a sound legislative judgment:

The constitutional mandate is satisfied if there be no manifest intent to discriminate in favor of a particular class of citizens to the exclusion of others similarly circumstanced, and the provisions of the restrictive act be in fact open alike to all citizens who may bring themselves within its terms."

Quoting from the cause of *Barbier v. Connolly*, 113 U. S. 27, 5 Sup. Ct. 357, 27 L. Ed. 923, the opinion continues: " 'Regulations for these purposes may press with more or less weight upon one than upon another; but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint, if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.' "

The opinion concludes with the following: "The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual or unnecessary restrictions upon lawful occupations; but, the public interest existing, the means adopted for its protection must be reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The exercise of the police power is subject to the supervision of the courts, but police regulations may not be declared void merely because deemed contrary to natural justice and

equity, but only because they violate some constitutional right."

The question as to the exercise of the police power of the state in regard to banks received attention in the recent case of *Noble State Bank v. Haskell*, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1812A, 487, wherein the Depositors Guarantee Fund Act of the state of Oklahoma was upheld, and, speaking to the insistence that the act deprived the plaintiff of property without due process of law, the court said: "In answering that question we must be cautious about pressing the broad words of the fourteenth amendment to a drily logical extreme. Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guarantees in the Bill of Rights. They more or less limit the liberty of the individual or they diminish property to a certain extent. We have few scientifically certain criteria of legislation, and, as it often is difficult to mark the line where what is called the police power of the states is limited by the Constitution of the United States, judges should be slow to read into the latter a nolumus mutare as against the lawmaking power. * * * With regard to the police power, as elsewhere in the law, lines are picked out by the gradual approach and contact of decisions on the opposing sides. * * * The question that we have decided is not much helped by propounding the further one, whether the right to engage in banking is or can be made a franchise. But as the latter question has some bearing on the former cases, if not here, we will dispose of it now. It is not answered by citing authorities for the existence of the right at common law.

There are many things that a man might do at common law that the states may forbid. He might embezzle until a statute cut down his liberty. We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the state in taking the whole business under its control."

In *Ex parte Pittman,* 31 Nev. 43, 99 Pac. 700, 22, L R. A. (N. S.) 266, 20 Ann. Cas. 1219, the following language is of interest here: "That the business of banking is a lawful business in which it is the inherent right of every citizen to engage will not be questioned. It is a business, however, with which the general public welfare is most clearly identified. Money is said to be the very lifeblood of the nation. The banking business has grown to be a part and parcel of our financial system, and it is so regarded by both the federal and state governments. The great bulk of business transactions, instead of being effected by an actual transfer of money, is accomplished through the medium of bank checks and drafts. Indeed, it would be next to impossible to carry on the great business transactions of this county, which aggregate hundreds of billions of dollars annually, without the aid of a well-organized banking system. It needs no extended argument to establish the fact that the banking business is in a class by itself. The assertion of the fact should be sufficient. While the business of banking may not be prohibited, it may be regulated, and it is of the highest importance to the public welfare that it be regulated by wise legislation."

In *State ex rel. Sparks v. Bank & T. Co.,* 31 Nev. 456, 103 Pac. 407, speaking to the argument that the provisions of the act of the Nevada Legislature, somewhat similar to that here under review, as creating an un-

just discriminaton, the Supreme Court of that state said: "It is claimed that by section 10 of the act the Legislature has attempted to authorize the courts to appoint receivers of banking corporations by special enactments not applicable to other corporations or citizens. This contention is met also by the fact that, as banks are to such a degree connected with, and responsible for, the financial welfare of the state, they are subject to regulation, and therefore laws may be passed pertaining to them which are not applicable to other corporations or citizens generally. *  *  *  Statutes regulating the banking business are of such public concern, and so generally upheld and enforced in different states, that the power of the Legislature to enact these laws can hardly be questioned longer."

Attention may be directed, also, to the following cases as touching more or less upon laws of similar character to that here under review.—*People v. San Luis Obispo,* 154 Cal. 194, 97 Pac. 306; *People v. Superior Court,* 100 Cal. 105, 34 Pac. 492; *Anderson v. Seymour,* 70 Minn. 358, 73 N. W. 171; *Matter of Murray Hill Bank,* 153 N. Y. 199, N. E. 298; *Atty. Gen. v. Cont. Ins. Co.,* 53 How. Prac. (N. Y.) 16; *Murphy v. Farmers' Bk.,* 20 Pa. 415.

The similarity of many of the provisions of the act here under consideration to the National Banking Laws received comment in the case of *Montgomery Bank & T. Co. v. Walker, supra;* and in this connection see, also, *Bushnell v. Leland,* 164 U. S. 684, 17 Sup. Ct. 209, 41 L. Ed. 598.

It therefore clearly appears that, on account of the nature of the banking business and the great public interests to be protected by wise legislation concerning the same, it is of such a character as to come within

[McDavid v. Bank of Bay Minette, et al.]

the internal police power of the state. This being true, and the law not being an arbitrary interference with private business, nor imposing unusual or unnecessary restrictions upon lawful occupations, the means adopted by this act may be said to be reasonably necessary for the accomplishment of its purpose; and it must be borne in mind that the police regulations of the state are not to be declared void merely because deemed contrary to natural justice and equity, but only because they violate some constitutional right.

We are clear to the conclusion, therefore, that, under the authorities herein cited, the provisions of the statute, which clearly give a priority of the right of administration in the banking board over the assignee selected by the bank itself, is not such a discrimination as falls within the prohibition of the Federal Constitution, nor does it violate our own provision as to the impairment of contract rights. (Const. Ala. 1901, § 23.) The Bank of Bay Minette acquired its right to do business when the law here under review was in full force and effect, and entered upon business with a full knowledge, at least chargeable to it, of all its provisions, one of which was that in case of liquidation the Legislature had designed a "statutory receiver," as it were, in the person of the superintendent of banks, who is charged with the administration of the affairs of the bank in such event.

The only question of real moment in this case, therefore, is whether or not in the face of the statutory provision, and despite thereof, the Bank of Bay Minette had the right to appoint its own receiver. Clearly, the proceedings in this cause show that the very purpose of the assignment was to evade the administration of the affairs of the bank by the banking board as prescribed by law.

[McDavid v. Bank of Bay Minette, et al.]

It is argued that other provisions of our laws provide for a voluntary dissolution of corporations generally, and there are, of course, also provisions for the administration of a trust estate under an assignment, as was made to the complainant in this case. It is therefore insisted that this is merely cumulative, so to speak, and these other provisions are unaffected thereby. The act here under review repeals all laws in conflict herewith.

A question of somewhat like character was considered in the case of *Murray Hill Bank,* 153 N. Y. 199, 47 N. E. 298, where it was held that the provision as to banks, being under an act treating particularly that subject, was an exception to the general law as to dissolution of corporations, and that the proceedings under the Banking Law must be given priority over a proceeding instituted by the directors for a voluntary dissolution of the corporation under the general law. The case bears some analogy, in principle, to the one here under consideration. In the opinion it is said: "The superintendent is made the statutory custodian until either the capital is restored by the voluntary action of the directors and stockholders, or proceedings in invitum are taken by the Attorney Gerenal. It is unreasonable to suppose that the Legislature, after committing possession of the property to its special officer and pointing out the way, through the suit of the Attorney General, for that possession to ripen into a complete settlement of the affairs of the bank, intended to allow him to be deprived of that possession, and to permit the bank to be wound up through a proceeding instituted by those presumptively responsible for its downfall, and who, apparently, failed to discover its insolvency, bad as it was, until the superintendent had closed its doors. *   *   *

"The course of the directors in instituting proceedings for voluntary dissolution, when the property of the bank was in the actual custody of the state, whether dictated by selfish interests or not, was certainly in contravention of the general purpose and policy of the Banking Act, because the effect was to deprive a state officer of the possession of the assets which, by command of the statute, were in his hands and which it was his duty to retain. It is of the highest importance that conflicts of jurisdiction in respect to questions arising under the Banking Act should not be permitted, and that the statutes should be so construed as to prevent unseemly struggles for the possession of assets, such as took place in the case of *Murray Hill Bank*. * * * We think that the command to retain possession deprives even the courts of power to disturb that possession through a receiver appointed in a preceeding independent of that instituted by the Attorney General."

The Supreme Court of Minnesota had under consideration in the case of *Anderson v. Seymour, supra,* an act somewhat similar to the one here under review and in which case a number of objections were presented to the act upon constitutional grounds. The law was held to be free from constitutional objection. It was also held that the receiver appointed pursuant to the Banking Act had the prior right to enforce the stockholders' liability—a right theretofore held by creditors only—and that the receiver had, so to speak, the right of way, and the creditor was not permitted to supersede it or to commence proceedings himself without good cause shown, for example, that the receiver is incompetent or disqualified or has willfully neglected his duty.

The case of *People v. Superior Court, supra,* deals somewhat at length with the reasons why the Legislature should see fit to provide that the affairs of a bank should be liquidated in a certain manner provided by law and by certain designated parties, rather than to leave such institutions subject at all times to actions of that character by creditors or stockholders. Speaking to the subject, it was said: "It was seen that, if the door were left open to a few creditors to bring suit and wind up the affairs of a banking corporation under the summary and expensive proceedings provided in the Insolvent Act, financial ruin might result to every banking institution in the state. By this act no injustice is done to any creditor or stockholder. The remarks of the court in *Attorney General v. Cont. L. Ins. Co.,* 53 How. Prac. (N. Y.) 22, are applicable to the case before us: 'His (the creditor's) power to wind it up, in which many others besides himself are interested, is only taken away. When, however, public policy and the interests of all, as well as his, demand its death (and that is practically what is accomplished [*Neal v. Hill,*] 16 Cal. 150, 76 Am. Dec. 508), the officers of the state alone can take its life and administer its assets. That this policy is better, wiser, and safer for all is manifest. * * * Rights of stockholders and creditors who have no knowledge thereof should not be jeopardized by suits instituted by any stockholder under the Revised Statutes, and so brought for a fraudulent and wrecking purpose by collusion with the officers of the corporation, which rights can surely be imperiled if the remedies given by the Revised Statutes still exist. The temptation so to do was too great to make every stockholder and every creditor the depositary of so great a power for mischief, and hence,

it seems to me, that the act of 1853 wisely provided a new method of extinction and administration by which the power which gave the life is alone empowered to take it.' "

It is to be noted therefore, that the act here under consideration does not seek to deprive a creditor or stockholder of the enforcement of any private right or claim so far as it concerns himself, but that it only seeks interference when the question of forfeiting the life of the corporation is involved or in such matters of public interest, as where the bank's affairs must be liquidated and wound up.

(4) It is unnecessary that we determine whether or not under all circumstances and in every instance the liquidation must be by the banking board, and also as to whether or not all other methods of liquidation are repealed by this act. What we do determine, however, is that in any event under the provisions of the act the superintendent of banks, pursuant to the order of the banking board, has a priority of right in the administration of the assets of the bank drawn into liquidation, and when asserted by him his rights are superior to those of an assignee of the bank, notwithstanding the assignee has by his bill sought the administration of a trust in a chancery court.

We are unable to see that the Bank of Bay Minette, organized in 1913, is in a position to complain that upon its dissolution and liquidation the superintendent of banks has a priority to administer its affairs, when such was fixed by the plain language of the statute at the time the said bank was organized. It was clearly a provision, as shown by these authorities, within the police powers of the state.

(5) It is further insisted that the provisions of section 49 of the act, when read in connection with

§ 48, create an unjust discrimination, in that by the latter section it is stipulated that the provisions of the act should not apply to national banks, and the argument is made that therefore a national bank would have the right to have a receiver appointed and the affairs of the Bank of Bay Minette liquidated, notwithstanding assertion of this right on the part of the superintendent of banks. A reading of the act makes it quite clear to our mind that such is not its meaning. It is plain that the exception was made as to national banks because of the well-known fact that they are under the jurisdiction of the federal authorities and beyond control in this respect by the state. Indeed, such exception as to national banks is found in our Constitution. Section 255, Const. 1901. It does not by any means follow, however, that such banks would have the right as claimed by complainant.

(6) It is insisted further that, as section 49 provided that no suit for the liquidation of a bank or for a receiver shall be instituted by any person except through the superintendent of banks, this leaves to him the exercise of a discretion which is beyond control; and upon the facts being presented to him he would have the right arbitrarily to decline action, notwithstanding just cause shown, and that for this reason the section is unconstitutional. This question is not of any practical importance here, and the complainant is not in a position to raise it.

The Bank of Bay Minette does not complain that the superintendent has failed to act, but the complaint is that he has acted with much diligence. The position of complainant therefore is exactly the reverse of the insistence made.

This court has uniformly held to the rule that it will not decide any constitutional question respecting

the validity of legislation unless its decision thereupon is indispensable to the determination of that litigation. After stating this to be the rule in *State ex rel. Crumpton v. Montgomery,* 177 Ala. 212, 59 South. 294, the opinion proceeds as follows: "It is of course a corollary of this rule, arising from the reason of the rule itself, that, where several or many constitutional questions are presented by the record, that or those only will be considered or determined which is or are necessary to the adjudication of the controversy. In short, this court will not decide any constitutional question respecting the validity of legislation, unless its decision thereupon is 'indispensable' to the determination of that litigation. Wisdom and a just respect for the Legislature suggest and approve these rules. If, as will later appear is the partial condition on this appeal, litigants may raise upon a record any and many constitutional questions, and if, on appeal, this court should assume the burden * * * of the appeal or not, we should then have a process of mere interrogations of this court, and, in many instances, the determination, in the given case, of moot questions, very like, if indeed not identical with, the procedure, in some jurisdictions, official propounding to the highest tribunal of questions affecting the validity of legislation. Favorable and prone as are the judges to respond to diligent, able, and instructive discussions of counsel of even immaterial questions presented by a record, this court cannot and will not adopt the procedure to which the stated process leads."

This question, therefore, not being presented for determination, and it not being indispensable to the determination of this litigation, need not be here decided or discussed. It will not be out of place, however, to

[McDavid v. Bank of Bay Minette, et al.]

state that this argument received considerable comment in *People v. Superior Court, supra,* where it was stated that, in the first place, it will not be assumed that a sworn officer will fail to do his duty; and in the second place, that if he refused to do his duty it was not clear that a mandamus would not lie to compel him to act. We merely cite this case without comment, intending neither approval or disapproval thereof, nor as intending any intimation of a view that if mandamus would lie in such event it would be the only or exclusive remedy. We intend no intimation whatever as to that subject, but leave it for determination when it shall arise.

We therefore conclude that in regard to any question presented by this record section 49 of the act of 1911, cited above, is free from objection upon the ground of being violative of any provision of the state or federal Constitution. It follows therefore that the superintendent of banks was acting within his authority, and we do not think the sufficiency of the notice given nor the action of the banking board can be here seriously questioned as not being in substantial compliance with the provisions of the act. The learned chancellor so concluded, and he rested his denial of the injunction upon his opinion that the act under review was constitutional and valid. We conclude that he correctly ruled in denying the preliminary injunction, and his decree to that effect is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.