THE STATE v. RICHCREEK.

[No. 20,701. Filed May 29, 1906. Rehearing denied October 23,
1906.]

1. BANKS AND BANKING.—*Regulation of, by State.—Common-
Law Right.*—Any person had the right, at common law, to
engage in any department of the banking business, but such
right may be regulated or restrained by the State. p. 221.

2. SAME. — *Regulation. — Police Power.—Constitutional Limita-
tions.*—The banking business is subject to inspection and con-
trol by the State under the exercise of the police power, subject
only to the limitations of the Constitution. p. 222.

3. SAME. — *Regulation. — Legislative Questions.—Constitutional
Limitations.*—The question of proper and needful regulations
of the banking business is primarily for the legislature, whose
action is subject to review by the courts only when in violation
of the Constitution. p. 222.

4. CONSTITUTIONAL LAW.—*Confiscation of Property.—Eminent
Domain.*—Article 1, §21, of the Indiana Constitution, providing
that "no man's property shall be taken by law without just
compensation," applies only to the taking of specific pieces of
private property by the exercise of the power of eminent
domain. p. 223.

5. SAME.—*Confiscation of Property.—Police Power.*—Article 1,
§21, of the Indiana Constitution, providing that "no man's
property shall be taken by law without just compensation"
does not apply to the exercise of the police power by which the
use of property, once lawful, may be restricted or entirely for-
bidden, thus destroying the value of such property, without
compensation and without the fault of the owner. p. 223.

6. SAME.—*Special Privileges.—Banks and Banking.*—The act of
1905 (Acts 1905, p. 182), regulating the business of banking
by persons, partnerships and unincorporated persons, does not
grant special privileges in violation of article 1, §23, of the

Indiana Constitution, since there appears no manifest intent to discriminate in favor of one class and against another class, such business being open to all on like terms.  p. 224.

7.  CONSTITUTIONAL LAW. — *Banks.* — *Special Privileges.* — *Due Process.*—The banking act of 1905 (Acts 1905, p. 182) requiring that not more than one-third of the capital of unincorporated banks shall be invested in furniture and fixtures, though it may incidentally inflict hardships and loss to some, applies to all persons alike under the same circumstances, and does not deprive any persons of their property without due process of law in violation of the Fourteenth Amendment of the federal Constitution.  p. 224.

8.  SAME.—*Due Process of Law.*—*Police Power.*—The fourteenth amendment of the Constitution of the United States does not apply to the exercise of the police power by the states, though the exercise of such power may inflict injury upon certain citizens more than others, where its exercise is calculated to promote the general health, morals, peace, education, or general welfare.  p. 225.

9.  SAME.—*Due Process of Law.*—*Property.*—*Implied Obligations Concerning.*—The owner of property under our government holds it under the implied obligation that the use of same shall not be injurious to the community.  p. 227.

10.  SAME.—*Banks and Banking.*—*Requiring Cash Capital.*—The banking act of 1905 (Acts 1905, p. 182) requiring the owners of unincorporated banks to invest at least $10,000 in the business, not more than one-third of which may be invested in the banking outfit, the balance to remain in cash, does not violate article 1, §21, of the Constitution, inhibiting confiscation, or article 1, §23, thereof, inhibiting class legislation, or the fourteenth amendment of the federal Constitution guaranteeing due process of law.  p. 228.

11.  STATUTES.—*Construction.*—*Banks and Banking.*—*Capital.*— The act of 1905 (Acts 1905, p. 182, §3) requiring that the owners of unincorporated banks shall certify to the Auditor of State that their individual net worth is at least double the amount invested as capital in such banks, does not prohibit such owners from using all of their money in the banking business. p. 228.

12.  BANKS AND BANKING.—*Character of Business.*—*Regulation.* —The banking business being of a *quasi*-public nature, the character of governmental supervision is largely a matter of legislative discretion.  p. 229.

13.  CONSTITUTIONAL LAW.—*Banks and Banking.*—*Capital Invested.*—*Liability.*—The act of 1905 (Acts 1905, p. 182, §3) re-

quiring owners of unincorporated banks to certify to the Auditor of State that they are worth at least double the amount of capital paid into such banks does not violate article 1, §21, of the Constitution, inhibiting confiscation, or article 1, §23, thereof, inhibiting class legislation, or the fourteenth amendment of the federal Constitution guaranteeing due process of law. p. 229.

14. STATUTES. — *Validity.* — *Banks and Banking.* — *Residence of Owners.*—The act of 1905 (Acts 1905, p. 182, §3) requiring that at least one partner, in a partnership bank, and the owner of an individual bank, shall be residents of the State, is valid. p. 229.

15. CONSTITUTIONAL LAW.—*Arbitrary Power.*—The legislature cannot exercise purely arbitrary power even in the exercise of the police power, but the power exercised cannot be supervised nor declared invalid unless it conflicts with some constitutional guaranty. p. 230.

From Criminal Court of Marion County (34,887); *Fremont Alford,* Judge.

Prosecution by the State of Indiana against Seth M. Richcreek. From a judgment for defendant, the State appeals. *Reversed.*

*Charles W. Miller,* Attorney-General, *C. C. Hadley, W. C. Geake, L. G. Rothschild* and *Rowland Evans,* for the State.

*D. P. Baldwin, T. E. Howard* and *W. W. Thornton,* for appellee.

MONTGOMERY, J.—Appellee was charged by affidavit with having transacted a banking business on July 3, 1905, and for two days prior thereto, and with having used the words "bank," "banker," and "banking" in connection with said business without having filed with the Auditor of State a detailed statement under oath as required by the act of March 4, 1905 (Acts 1905, p. 182, §§2994a-2994j Burns 1905), entitled: "An act to regulate the business of banking by individuals, partnerships and unincorporated persons." The affidavit was quashed, upon appellee's motion, for the alleged reason that it did not contain facts sufficient

to constitute a public offense; and from that decision the State appealed.

The first three sections of the statute upon which this prosecution was based, read as follows:

"Section 1. That every partnership, firm or individual transacting a banking business within this State or using the word bank, banker or banking in connection with his or its business shall be subject to the provisions of this act.

"Section 2. That from and after July 1, 1905, it shall be unlawful for any partnership, firm or individual to transact a banking business in this State unless such partnership, firm or individual has property of the cash value of at least $10,000. Such property shall be in money, bank furniture and fixtures or real estate for the conduct of the business of such bank, all to be set apart and kept good and unimpaired for the security of creditors of any such bank, and provided that the real estate, bank furniture and fixtures shall not constitute more than one-third in amount and value of the entire capital of such bank.

"Section 3. Every partnership, firm or individual now transacting or hereafter desiring to transact a banking business in this State, shall, under oath, file with the Auditor of State, a full, complete detailed statement of First. The name of the bank or proposed bank. Second. A copy of the articles of copartnership and agreement if a copartnership under which the business of the bank is being or is to be conducted, which shall be executed and acknowledged by all the parties interested therein, and at least one of whom shall be at all times a resident of the State of Indiana. If a banking business is being or is to be transacted or carried on by an individual, such individual shall at all times, while in such banking business, be a resident of the State of Indiana and the statement herein required shall so show. Third. The county and city or town in which the bank is to be located and the business carried on. Fourth. The amount of the capital paid into the business,

and to be kept and maintained at all times in the business. Fifth. A statement that the responsibility and net worth of the individual members of such firm, partnership or individual is equal to an amount at least double the amount of the capital paid into such bank as herein provided. Sixth. If not disclosed in the partnership agreement, then the names of the officers, agents or employes in the active charge of and management of the business of the bank. Every partnership, firm or individual now doing a banking business in this State shall on or before July 1, 1905, file with the Auditor of State a detailed statement as provided herein."

No formal objection to the affidavit has been suggested, but the assault is directed solely against the act upon which it is founded. It is charged that the provision of section two, forbidding more' than one-third of the capital of the bank to be invested in real estate, bank furniture and fixtures for the conduct of the business of such bank, and the second and fifth subdivisions of section three of the statute, are invalid and unconstitutional.

The right of banking, in all its departments, at common law belonged to the individual citizen, to be exercised at pleasure. It is conceded by counsel, and it is unquestionably settled, that the sovereign authority of the State may regulate and restrain the exercise of such right. *Bank of Augusta* v. *Earle* (1839), 13 Pet. *519, *596, 10 L. Ed. 274; *Blaker* v. *Hood* (1894), 53 Kan. 499, 36 Pac. 1115, 24 L. R. A. 854; *State, ex rel.,* v. *Woodmansee* (1890), 1 N. Dak. 246, 46 N. W. 970, 11 L. R. A. 420; *Curtis* v. *Leavitt* (1857), 15 N. Y. 9, 52; *Attorney-General* v. *Utica Ins. Co.* (1817), 2 Johns. Ch. 371; *People, ex rel.,* v. *Utica Ins. Co.* (1818), 15 Johns. 358, 8 Am. Dec. 243; *People* v. *Bartow* (1826), 6 Cowan (N. Y.) 290; *Nance* v. *Hemphill* (1840), 1 Ala. 551; *State* v. *Williams* (1852), 8 Tex. 255; *State* v. *Stebbins* (1828), 1

Stew. (Ala.) 299; 1 Morse, Banks and Banking (4th ed.), §13; Zane, Banks and Banking, §§9, 10.

The *quasi*-public nature of the banking business, and the intimate relation which it bears to the fiscal affairs of the people and the revenues of the State, clearly

2.  bring it within the domain of the internal police power, and make it a proper subject for legislative control. Bankers invite general deposits primarily for their own profit, and usually obtain a measure of public patronage, and the expediency of guarding the people against imposition, extortion, and fraud, of affording efficient means of detecting irregular practices, and of learning the true financial condition of the bank, and the necessity of preserving the confidence of patrons in its solvency, and of protecting their interests in case of insolvency, justify inspection and control by the State. When the sovereign people of a state, acting through the legislature, find such police regulation necessary to protect public health, safety or morals, to prevent fraud or oppression, or to promote the general welfare, the power to act is supreme, subject only to such limitations as are imposed by the fundamental law. The question as to what regulations are proper

3.  and needful is primarily for legislative decision, yet when the police power is used to regulate a business or occupation which in itself is lawful and useful to the community, the courts, if called upon, must determine finally whether such regulations as may have been prescribed are so far just and reasonable as to be in harmony with constitutional guaranties. *Republic Iron & Steel Co.* v. *State* (1903), 160 Ind. 379.

Appellee's learned counsel frankly concede that the business of banking, whether conducted by a corporation or by individuals, is a legitimate subject of inspection and regulation by law under the police power; and further, that the provisions of section two of the act under consideration, making it unlawful to transact a banking business under

this act on a capital of less than $10,000 in money, bank furniture, fixtures and real estate, all to be set apart and kept good for the security of creditors of the bank, are wise and salutary. They earnestly contend, however, that the proviso, "that the real estate, bank furniture and fixtures shall not constitute more than one-third in amount and value of the entire capital of such bank," contravenes the constitutional guaranty that "no man's property shall be taken by law without just compensation" (Const., Art. 1, §21), since many private bankers already in business have furniture and fixtures and real estate of more than half, and in some cases nearly equal to, the value of the whole banking capital. It is further argued that this clause violates §23, article 1, of the state Constitution, which provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges and immunities which, upon the same terms, shall not equally belong to all citizens," inasmuch as it casts a burden of discriminating inequality upon established bankers having valuable banking houses and equipments; and finally, that it deprives such bankers of their property without due process of law, and abridges their privileges and immunities in contravention of the fourteenth amendment to the Constitution of the United States.

It was held in *City of Aurora* v. *West* (1857), 9 Ind. 74, 83, that it is only the taking of specific pieces of private property by the exercise of the power of eminent domain, without compensation, that is prohibited by §21, article 1, of the state Constitution, and that property might be taken by taxation for public purposes, without any other compensation than the general and common benefits accruing from the expenditure of the fund thereby produced. It is equally clear that this constitutional provision was not intended to serve as a restraint upon the exercise of the police power of the state for the public welfare, by which a par-

ticular use of property once lawful and unobjectionable, may be forbidden, or property be wholly destroyed, without compensation and without the fault of the owner.

The insistence that the act grants special privileges and immunities is equally untenable. It is manifest that in every regulating statute the precise terms prescribed must be to some extent arbitrary, depending upon the exercise of a sound legislative judgment. The constitutional mandate is satisfied if there be no manifest intent to discriminate in favor of a particular class of citizens to the exclusion of others similarly circumstanced, and the provisions of the restrictive act be in fact open alike to all citizens who may bring themselves within its terms. This act neither confers special privileges, nor makes unjust discriminations, but its privileges are open to every citizen upon the same terms. It denies no privilege to any one, and operates alike upon all who may avail themselves of its benefits. *Parks* v. *State* (1902), 159 Ind. 211, 225, 59 L. R. A. 190; *Barrett* v. *Millikan* (1901), 156 Ind. 510, 83 Am. St. 220; *Hancock* v. *Yaden* (1890), 121 Ind. 366, 6 L. R. A. 576, 16 Am. St. 396; *Barbier* v. *Connolly* (1885), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *State, ex rel.,* v. *Currens* (1901), 111 Wis. 431, 87 N. W. 561, 56 L. R. A. 252.

The circumstance, that for a time it may inflict hardship, inconvenience and possibly loss to certain individuals, does not amount to a constitutional objection, so long as such burdens or losses are not needlessly and unreasonably imposed, but result as an incident of a general enactment fairly designed to subserve the public welfare. If the mere fact of resulting inconvenience and loss to an established business, admittedly subject to public control, were sufficient to preclude control under the police power, then regulation would be practically impossible, and this most salutary and necessary power of sovereignty be seriously abridged or wholly destroyed. This statute

grants equal privileges and imposes like restrictions upon all persons under the same circumstances, and does not deprive appellee of due process of law, or deny him equal protection of the law in violation of the fourteenth amendment to the Constitution of the United States. *Wurts* v. *Hoagland* (1885), 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. Ed. 229; *Duncan* v. *Missouri* (1894), 152 U. S. 377, 382, 14 Sup. Ct. 570, 38 L. Ed. 485; *Eldridge* v. *Trezevant* (1896), 160 U. S. 452, 469, 16 Sup. Ct. 345, 40 L. Ed. 490; *Lowe* v. *Kansas* (1896), 163 U. S. 81, 88, 16 Sup. Ct. 1031, 41 L. Ed. 78; *Missouri Pac. R. Co.* v. *Mackey* (1888), 127 U. S. 205, 209, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Pacific Express Co.* v. *Seibert* (1892), 142 U. S. 339, 352, 12 Sup. Ct. 250, 35 L. Ed. 1035; *Budd* v. *New York* (1892), 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247; *Hayes* v. *Missouri* (1887), 120 U. S. 68, 71, 72, 7 Sup. Ct. 350, 30 L. Ed. 578; *Barbier* v. *Connolly, supra;* *Mugler* v. *Kansas* (1887), 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Powell* v. *Pennsylvania* (1888), 127 U. S. 678, 8 Sup. Ct. 992, 1252, 32 L. Ed. 253; *Crowley* v. *Christensen* (1890), 137 U. S. 86, 89, 11 Sup. Ct. 13, 34 L. Ed. 620; *Bowditch* v. *Boston* (1879), 101 U. S. 18, 25 L. Ed. 980; *Dent* v. *West Virginia* (1889), 129 U. S. 114, 124, 9 Sup. Ct. 231, 32 L. Ed. 623; *Missouri Pac. R. Co.* v. *Humes* (1885), 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; *Glucose Refining Co.* v. *City of Chicago* (1905), 138 Fed. 209, 217.

In the case of *Barbier* v. *Connolly, supra,* Justice Field, speaking for the court, said: "The fourteenth amendment, in declaring that no state 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like

circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses. But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity. * * * Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation, which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, it is not within the amendment."

In the case of *Mugler* v. *Kansas, supra,* Justice Harlan disposed of an objection similar to that advanced by appel-

State *v.* Richcreek—167 Ind. 217.

lee in the following language: "It is contended that, as the primary and principal use of beer is as a beverage; as their respective breweries were erected when it was lawful to engage in the manufacture of beer for every purpose; as such establishments will become of no value as property, or, at least, will be materially diminished in value, if not employed in the manufacture of beer for every purpose; the prohibition upon their being so employed is, in effect, a taking of property for public use without compensation, and depriving the citizen of his property without due process of law. In other words, although the state, in the exercise of her police powers, may lawfully prohibit the manufacture and sale, within her limits, of intoxicating liquors to be used as a beverage, legislation having that object in view cannot be enforced against those who, at the time, happen to own property, the chief value of which consists in its fitness for such manufacturing purposes, unless compensation is first made for the diminution in the value of their property, resulting from such prohibitory enactments. This interpretation of the fourteenth amendment is inadmissible. It cannot be supposed that the states intended, by adopting that amendment, to impose restraints upon the exercise of their powers for the protection of the safety, health, or morals of the community. * * *

9. The principle, that no person shall be deprived of life, liberty, or property, without due process of law, was embodied in substance, in the constitutions of nearly all, if not all, of the states at the time of the adoption of the fourteenth amendment; and it has never been regarded as incompatible with the principle, equally vital, because essential to the peace and safety of society, that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community."

The charters of national banks, state banks of discount and deposit, saving banks, and loan and deposit companies,

authorize them to hold permanently only such real estate as may be necessary for the immediate and convenient accommodation of their business. It is not required that this limitation be altogether wise and just to warrant a holding that it is valid, but it is sufficient if it appears that it was designed and is reasonably calculated to subserve some public purpose. Private banks may be fairly expected to accommodate the public by making loans and discounts, and to that end should have some capital in money, in addition to that entrusted to their care by depositors. It would be manifestly unwise to authorize an investment of the entire capital of a bank in real estate, furniture, and fixtures, as inimical to public accommodation; and, it is a matter of current history that depositors have been made the victims of imposition and fraud, through the allurements of pretended bankers whose only capital consisted of gilt signs, plate glass, mahogany furniture and richly embellished safes. We are not judicially advised that the provision limiting the investment of banking capital in the species of tangible property named would unjustly or unreasonably invade individual rights, but, on the contrary, it appears to us that this provision was suitably designed for the public good, and is a prudent regulation for the guidance of solvent bankers, and a proper precaution against fraud and imposition on the part of financial charlatans. It is our conclusion, therefore, that section two of the act does not contravene any of the constitutional guaranties invoked by appellee.

The same constitutional objections are urged against the validity of that provision of section three of the act, which requires the banker to make oath, "that the responsibility and net worth of the individual members of such firm, partnership or individual is equal to an amount at least double the amount of capital paid into such bank." It is insisted that this clause prohibits a banker from using all of his capital in his business, and is an in-

stance of arbitrary selection and of illegal discrimination. It is not correct to say that the banker is thereby prohibited from using all his capital in his business, but he is forbidden from treating his entire holdings as capital stock, and in effect required to have and maintain a reserve or surplus fund. In considering this provision it must be borne in mind that the banking business is not wholly private, but *quasi*-public in character, and subject to governmental supervision, and in view of this fact the arguments advanced appear more appropriate for legislative than for judicial consideration. This feature of the statute is not different in principle from the double liability of stockholders in incorporated banks, and for the reasons already given and upon the authorities cited we are of opinion that it does not violate any of the constitutional principles relied upon by appellee.

It is finally contended that the provision requiring that an individual, or one member of a firm, conducting a banking business under this act must be a resident of Indiana, is invalid. We cannot sustain this objection.

In the case of *Welsh* v. *State* (1890), 126 Ind. 71, 9 L. R. A. 664, this court, among other things, said: "It is not true, as is sometimes argued, that the citizen derives his right to sell intoxicating liquor from the particular state in which he sells. In selling he is but exercising his common-law right. * * * It is not an unreasonable requirement that a person who desires to avail himself of a license to retail intoxicating liquors shall submit himself to the jurisdiction of the State, by becoming an inhabitant thereof, to the end that he may be readily apprehended and punished for any violation of the law in connection with his business."

The propriety of this provision is readily manifest. A private banker inviting the confidence and patronage of the

public should not only possess suitable capital, but also a good character. The people entrusting their money to his care should be afforded an opportunity of learning something of his character, habits, and mode of life without going beyond state lines for information. A good character will not insure the safety of a business entrusted wholly to employes, but personal supervision is highly requisite. The situs of the bank assets for the purpose of taxation should be definitely fixed, and not left open to dispute by the non-residence of the owner. It is important that the banker should be within the jurisdiction of our courts, civil and criminal, and be answerable personally to the complaints of creditors, and easily apprehended in case of a violation of the laws governing his business. *Welsh* v. *State, supra; Trageser* v. *Gray* (1890), 73 Md. 250, 20 Atl. 905, 9 L. R. A. 780, 25 Am. St. 587; *McCready* v. *Virginia* (1876), 94 U. S. 391, 24 L. Ed. 248; *Wagner* v. *Town of Garrett* (1889), 118 Ind. 114. The provisions of the New York statute upon this subject are much more stringent, but their validity has not been questioned. See New York Banking Law (L. 1882 Ch. 409, §32).

The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual or unnecessary restrictions 15. upon lawful occupations, but the public interest existing, the means adopted for its protection must be reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The exercise of the police power is subject to the supervision of the courts, but police regulations may not be declared void merely because deemed contrary to natural justice and equity, but only because they violate some constitutional right. The provisions of the statute under consideration do not violate the constitutional guaranties relied upon, but, in our opinion, have substantial relation to the public welfare, and were intended and are reasonably calculated to protect

the people of the State against fraud and imposition, and are consequently valid.

The court erred in quashing the affidavit. The judgment is reversed, with directions to overrule appellee's motion to quash, and for further proceedings.