[Crim. No. 663. First Appellate District.—February 14, 1917.]

# THE PEOPLE, Respondent, v. ANTONE FODERA, Appellant.

CRIMINAL LAW—FAILURE TO STOP AND RENDER ASSISTANCE UPON AUTOMOBILE COLLISION—EVIDENCE—REPUTATION FOR KINDNESS AND GENTLENESS.—Upon a charge of violating section 367c of the Penal Code, requiring drivers of automobiles colliding with other vehicles to stop and render assistance to the occupants of the vehicle collided with and who may have been injured by such collision, it is within the proper bounds of cross-examination to ask witnesses produced by the defendant who had testified as to his good reputation for kindliness and gentleness whether they had ever heard that the defendant had been arrested for picking chickens alive, or that he had been arrested for running down a boy or man, or that he had been arrested for unlawfully killing an elk.

ID.—PREVIOUS ARRESTS AND FINES FOR UNLAWFUL SPEEDING.—No prejudicial error can be predicated upon the action of the district attorney in making, or of the court in permitting, inquiry as to whether the character witnesses for the defendant knew of his arrests and pleas of guilty and fines for unlawful speeding, where no assignment of misconduct was made to the questions, and there was no request for admonition or instruction to the jury to disregard the evidence.

ID.—SELLING OF STOLEN AUTOMOBILES—MISCONDUCT OF DISTRICT ATTORNEY—LACK OF PREJUDICE.—No prejudicial error can be predicated upon the misconduct of the district attorney in asking the character witnesses called by the defendant as to whether they had heard it discussed that the defendant was under investigation by the police department for the selling of several stolen automobiles, where objections were sustained to the questions, no request made to the court to admonish or instruct the jury to disregard the misconduct, and the court of its own motion instructed the jury to disregard questions which contained insinuations against any party to the action.

ID.—VISITING MEMBERS OF BLACK HAND SOCIETY.—Prejudicial error cannot be predicated upon the misconduct of the district attorney in asking a witness whether he ever heard discussed that on the day of the crime the defendant was visiting at the home of a person who had been arrested as a member of the Black Hand Society, where the defendant allowed the question and answer to stand and made no request for the jury to be instructed to disregard the same.

ID.—KNOWLEDGE OF COLLISION—ELEMENT IMPLIED—CONSTITUTIONALITY OF SECTION 367c, PENAL CODE.—Section 367c of the Penal Code is

not unconstitutional because it does not expressly embody in its phraseology words limiting its application to those persons who knowingly cause their vehicles to collide with those occupied by others, as the element of knowledge of the fact of the collision is necessarily to be implied from the requirements of the act to the effect that drivers of such vehicles must stop and render aid to those who may possibly have been injured in the collision.

ID.—DISCLOSURE OF NUMBER OF COLLIDING VEHICLE—NAME AND ADDRESS OF DRIVER.—Such section is not unconstitutional in requiring the driver of a colliding vehicle to give the number of his machine and his name and address, as such requirement does not compel him to be a witness against himself in violation of section 13 of article I of the constitution.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. W. A. Beasly, Judge.

The facts are stated in the opinion of the court.

W. E. Foley, and Devoto, Richardson & Devoto, for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, Arthur M. Free, District Attorney, and Archer Bowden, Deputy District Attorney, for Respondent.

LENNON, P. J.—This is an appeal from a judgment of conviction of the defendant upon the charge of a violation of section 367c of the Penal Code, requiring drivers of automobiles colliding with other vehicles to stop and render assistance to the occupants of the vehicle collided with and who may have been injured by such collision, under penalties which render the act or neglect of such drivers in failing or refusing to comply with such requirements a felony.

The facts of this case immediately preceding, attending, and succeeding the collision are substantially these: On the evening of October 31, 1915, a little after sunset, the defendant was proceeding northward along the state highway near the town of Mayfield, in the county of Santa Clara, on his way home to San Francisco from Coyote, in that county, to which place he had made the trip earlier in the day. There were four companions with the defendant in the car, which

he was driving at a rate estimated as exceeding forty miles an hour. A closed limousine, in which two ladies—Mrs. Carolan and Miss Shute—were being driven by a chauffeur, was also proceeding northward along the highway at that point at about twenty-five miles an hour. The defendant undertook to pass the limousine, swerving to the left in order to do so. At the moment of passing a tandem motorcycle, driven by one Hector Zapata with one Joseph Ottens as his companion, two young students of the university of Santa Clara, were going southward at the rate of eighteen to twenty miles an hour, and were also about to pass said limousine, when a collision occurred between the defendant's machine and said motorcycle, in which Zapata was instantly killed and Ottens severely injured. The defendant did not stop or check his speed, but rather increased it until he was overtaken at Mayfield by the Carolan car, when the chauffeur called to the defendant to stop. There is also some evidence that the chauffeur, who spoke English imperfectly, made some remark to the defendant to the effect that he had killed somebody. The defendant stopped momentarily, but did not return to the scene of the collision, but continued rapidly on his way to San Francisco, until he was finally halted by the officers at Burlingame. He insisted at all times that he did not know of the collision at the time of its occurrence, and in this he was supported by the testimony of the four other persons who were occupants of the car. The evidence educed at the trial disclosed, however, that the impact of the collision was distinctly heard by the two ladies who were within the closed limousine, and also by a Mr. Van Gordon, who was sitting upon the porch of his residence a hundred yards away from the scene of the collision. It also appeared that the body of Zapata had been carried along by the defendant's car for a distance of from forty-five to sixty feet before falling from it to the roadside; while from the exhibits produced at the trial and exhibited to this court upon the oral argument of this appeal, consisting of photographs of the defendant's car, and also of articles of clothing worn by one of the occupants thereof sitting on the side nearest to the point of contact, it appeared that the fenders and tool-box of the defendant's car had been bent and indented by the impact, while the sides of the machine and the coat of its said occupant were bespattered with the blood and brains of Zapata.

It would thus appear that the evidence before the jury was abundantly ample to justify the defendant's conviction. Notwithstanding this fact, the appellant insistently contends that the judgment of conviction herein should be reversed on account of certain alleged acts of prejudicial misconduct on the part of the district attorney occurring during the trial and the argument of the case and claimed to have resulted in a miscarriage of justice. The specific acts of alleged misconduct relied upon for a reversal substantially stated are these:

During the trial of the cause and prior to the time when the defendant himself had taken the stand as a witness in his own behalf his counsel proffered proof that his general reputation for truth, honesty, and integrity was good. The trial court, upon objection made, limited the evidence offered in this regard to proof of the general reputation of the defendant for kindness and gentleness, as being the particular qualities involved in the particular inquiry. The defendant apparently accepted this limitation; and proceeding upon the theory that it would be unlikely that a person of gentle and kindly nature would disregard the promptings of humanity as well as the commands of the law requiring him to stop and render aid to those who might be injured by a collision if he was aware of the fact or likelihood of such injury, the defendant called several witnesses, who testified that the general reputation of the defendant for kindness and gentleness was good. Of the witness George Filmer the district attorney asked upon cross-examination whether he had ever heard it discussed that the defendant, with several other poultry-men of San Francisco, had been arrested for picking chickens alive. The same question was asked of each of the other witnesses to the defendant's general reputation for kindness and gentleness. A number of these replied to the questions that they had never heard the matter discussed; while others stated that they had heard of it, but had investigated it and found that the rumor had no foundation in fact. The district attorney also asked of most, if not all, of said witnesses if they had not heard that the defendant had run down a boy or a man upon the streets of San Francisco and been arrested for it, to which most of them replied that they had never heard of it. Of some of said witnesses the district attorney also inquired if they had not heard of the defendant's arrest for unlawfully

killing an elk. To this line of questions in most instances no objection or assignment of misconduct was made at the time, nor was the good faith of the district attorney in asking these questions assailed at the trial; and it seems very clear that the questions themselves had a direct bearing upon the issue as to the particular qualities of the defendant to which these several witnesses were called to testify, and that, in the absence of a showing of bad faith on the part of the prosecuting officer, they were within the proper bounds of his cross-examination. The district attorney also asked of a number of said witnesses whether they had heard that the defendant had on several occasions been arrested for speeding his automobile beyond the legal limit, and in some instances had pleaded guilty and paid fines therefor. In most cases this question was asked and answered negatively without objection or assignment of misconduct. It may be seriously questioned whether a person habituated to reckless driving of an automobile to the extent of being in a number of cases and in several counties arrested therefor is of that kindly and humane disposition which the character witnesses of the defendant herein would have had the jury believe him to be; but however this may be, it appears, as above stated, that in most instances no objection or assignment of misconduct was made to these questions, and that also in most cases the witnesses stated that they had never heard of the matter, and in some instances the witnesses admitted that they had heard of these episodes. It further appears from the record that no request was made to the court for an admonition to the jury to disregard this evidence; nor was any instruction to that effect requested; nor was the good faith of the district attorney in making these inquiries at the time brought into question. Under these circumstances no prejudicial error can be predicated upon the action of the district attorney in making, or of the court in permitting, the inquiry as to whether the character witnesses for the defendant knew of his arrests and pleas of guilty and fines for unlawful speeding.

The district attorney is also charged with misconduct in asking several of said witnesses whether they had heard it discussed that the defendant was under investigation by the police department of San Francisco for the selling of several stolen automobiles. The question was improper, and the action of the district attorney in asking it an act of misconduct

on his part; but the record shows that the court in each instance sustained the defendant's objections to the question, and further shows that while the defendant's counsel assigned the act of the district attorney as misconduct, no request was made of the court to admonish or instruct the jury to disregard the same. Notwithstanding this, the court of its own motion gave the jury the following instruction: "Offers of testimony by either counsel which the court refused to admit in evidence, and answers given by witnesses which may have been stricken out by the court, are not evidence, and should be disregarded by you. It sometimes happens that counsel asks a question of a witness which contains an insinuation against one or other party to the action. The insinuations contained in such questions are not evidence, and you must disregard them." It is to be assumed that the jury heeded this admonition with respect not only to this precise inquiry, but also as to other questions of doubtful propriety respecting which objections were made and sustained by the court. (*People* v. *Burke,* 18 Cal. App. 72, [122 Pac. 435].)

The district attorney is also charged with misconduct in having asked of the witness Charles Swanberg the following question: "Q. Did you ever hear it discussed, Mr. Swanberg, that on the day of this affair he [the defendant] was visiting at the home of a person who had been arrested as a member of the Black Hand Society?" Before objection could be made the witness responded, "I never heard it discussed." The defendant then made his objection and assignment of misconduct; whereupon the court stated to the counsel for the defendant, "If you wish it will be stricken out." No such request was made, however, nor was the court asked to either admonish or instruct the jury, nor was the district attorney charged with bad faith in making the inquiry. It is sufficient to say, therefore, that since the defendant chose to allow the question and answer to stand, and made no request for an admonition or instruction to the jury to disregard it, no prejudicial misconduct sufficient to justify a reversal of the case can be predicated upon the asking of the question.

The appellant further contends that the district attorney was guilty of misconduct in producing a justice of the peace of San Mateo with his docket, for the purpose of showing affirmatively that the defendant had in fact been arrested, and

pleaded guilty and paid a fine upon the charge of unlawful speeding. It is sufficient to say that the evidence was incompetent, and its proffered introduction improper, but that the court promptly sustained an objection to it, and that the defendant neither assigned the proffer of it as misconduct nor asked for an instruction to the jury to disregard it. The error and impropriety of its offer in evidence must therefore be held to have been cured by the foregoing voluntary instruction of the court in its final charge to the jury.

With regard to the alleged acts of misconduct on the part of the district attorney during the argument of the case, we do not deem it necessary to deal with these in detail, for the reason that in most instances the court admonished the district attorney to confine himself to the evidence in the case; and for the further reason that upon the whole these imprudent remarks of the district attorney were not in our opinion sufficiently prejudicial to have seriously affected the verdict or to warrant a reversal of the case; particularly in view of the fact that, as above stated, the proof presented to the jury in the form of testimony and exhibits was amply sufficient to justify the verdict of conviction, and to warrant the conclusion that none of the several alleged acts of misconduct on the part of the prosecuting officer were sufficiently prejudicial in character or influential in effect as to cause the verdict of conviction in this case to have been a miscarriage of justice.

The final contention of the appellant is that the section of the Penal Code under which the defendant was prosecuted and convicted is unconstitutional, for two alleged reasons: First, that the section does not expressly embody in its phraseology words limiting its application to those persons who *knowingly* cause their vehicles to collide with those occupied by others. But our reading of the section in question convinces us that the element of knowledge of the fact of the collision is necessarily to be implied from the requirements of the act, to the effect that drivers of such vehicles must stop and render aid to those who may possibly have been injured in the collision. Moreover, section 20 of the Penal Code, which is to be read together with and into the section under review, provides that "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." We are of the opinion that the act is not unconstitutional for the first reason assigned.

The appellant urges as the second reason for its alleged invalidity its provision requiring the driver or occupant of a vehicle striking another to give certain information as to the number of the vehicle, the name and address of the driver and of the owner and of its passengers. It is claimed that this requirement, by compelling the persons of whom such information is demanded to be witnesses against themselves, amounts to a violation of section 13 of article I of the state constitution. But the appellant concedes that this point has been decided adversely to his contention in a number of cases from other states which, as respondent shows, have been approved by this court in the case of *People* v. *Diller*, 24 Cal. App. 799, 802, [142 Pac. 797]. There is therefore no merit in this contention.

Judgment and order affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 16, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 13, 1917.