## ULE *v.* STATE OF INDIANA.

[No. 26,293.   Filed February 20, 1935.   Rehearing denied April 29, 1935.]

*Andrew Jacobs,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Ralph E. Hanna,* Deputy Attorney-General, for appellee.

HUGHES, J.—This was a criminal prosecution by the State of Indiana against appellant in the Marion County Criminal Court upon an indictment charging appellant with violating the provisions of Section 41 of Chapter 213 of the Acts of 1925 (as amended, Section 2, Chapter 190, Acts of 1929), commonly known as the hit-and-run drivers act, and the same being Section 47-518, Vol. 8, Burns, 1933, and Section 11171, Baldwins Indiana Statutes 1934.

The indictment charged that the appellant on the 7th day of January, 1932, while driving and operating an automobile on a public street in the city of Indianapolis struck and hit one John Batkin, who died from the injuries received, and that said appellant unlawfully and feloniously failed to stop his automobile and render and offer assistance to said Batkin; that he

failed to report said accident to any police officer, peace officer, or police station, and he failed to give his name, address, and license number of his automobile.

The appellant filed a motion to quash the indictment which was overruled. He was tried by the court, and found guilty as charged, and sentenced to the Indiana Reformatory for one year and fined $100.00.

The errors relied upon for reversal are as follows:

(1) The court erred in overruling appellant's motion to quash the indictment.

(2) The court erred in overruling appellant's motion in arrest of judgment. Other errors were assigned, but are not set out under propositions, points, and authorities, nor discussed, and are therefore waived.

The section of the statute under consideration is as follows:

"Any person, who while driving or operating a motor vehicle or motor-bicycle on any highway in this state, although he may not be at fault, shall strike, wound or injure any human being, or shall meet with an accident whereby any other person receives an injury or the property of any other person is damaged, shall immediately stop, render or offer to render assistance, and give to the injured person or to some person who is with such injured person or to the owner or person in charge and control of the damaged property, his name, residence address including street number, city or town, county and state, also the license number of said motor vehicle or motor-bicycle and produce or offer for inspection, the certificate of registration therefor: Provided, That if such person is either killed or rendered unconscious and there is no other person to whom such person involved in the accident can report, then such person shall report such information to a police or peace officer, or in case no police or peace officer is in the vicinity of the place of such injury or accident, then he shall report such injury or accident to the nearest police station, peace officer or judicial officer. Any person who shall fail or refuse to comply with the pro-

visions of this section shall, if he shall have caused an injury to any other person be deemed guilty of a felony, and, upon conviction thereof, shall, for a first offense, be punished by a fine of not more than five hundred dollars ($500.00), to which may be added imprisonment for a term of not to exceed two years, or by both such fine and imprisonment; and if any such person be convicted a second or subsequent time for a like offense he shall be deemed guilty of a felony and shall be punished by imprisonment for a term of not less than one (1) year and not more than two (2) years; and if he shall have caused an injury to property, he shall be deemed guilty of a misdemeanor, and, upon conviction thereof, he shall be fined in any sum not less than twenty-five dollars ($25.00) and not more than two hundred and fifty dollars ($250.00), to which may be added imprisonment for not to exceed sixty (60) days."

It is contended by the appellant that the Act is in conflict with Section 14, Article 1, of the Constitution of Indiana, which provides that:

"No person shall be put in jeopardy twice for the same offense. No person, in any criminal prosecution, shall be compelled to testify against himself."

There is no question but that the section in question was enacted on the theory that it is a reasonable exercise of the police power of the state, necessary and proper for the protection of the safety and general welfare of those who travel upon the public highways of the state. The constitutionality of the section in question has never been presented to this court for consideration, but the constitutionality of statutes of other states, very similar to ours has been passed upon by courts of last resort.

In the case of *Ex Parte Kneedler* (1912), 243 Mo. 632, 147 S. W. 983, practically the same question is raised and passed upon as is presented in the instant

case, and under a statute very similar to the one in this state. The court said (p. 639):

"The statute is a simple police regulation. It does not make the accident a crime. If a crime is involved, it arises from some other statute. It does not attempt in terms to authorize the admission of the information as evidence in a criminal proceeding. The mere fact that the driver discloses his identity is no evidence of guilt, but rather of innocence. . . . On the contrary, flight is regarded as evidence of guilt. In the large majority of cases such accidents are free from culpability. If this objection to the statute is valid, it may as well be urged against the other provisions, which require the owner and chauffeur to register their names and number, and to display the number of the vehicle in a conspicuous place thereon, thus giving evidence of identity which is the obvious purpose of the provisions. . . . We have several statutes which require persons to give information which would tend to support possible subsequent criminal charges, if introduced in evidence. Persons in charge are required to report accidents in mines and factories. Physicians must report deaths and their causes, giving their own names and addresses. Druggists must show their prescription lists. Dealers must deliver for inspection foods carried in stock. We held a law valid which required a pawn broker to exhibit to an officer his book wherein were registered articles received by him, against his objections based on this same constitutional provision. We held this to be a mere police regulation, not involved because there might be a possible criminal prosecution in which it might be attempted to use this evidence to show him to be a receiver of stolen goods. . . . If the law which exacts this information is invalid because such information, although in itself no evidence of guilt, might possibly lead to a charge of crime against the informant, then all police regulations which involve identification may be questioned on the same ground. We are not aware of any constitutional provision designed to protect a man's conduct from judicial inquiry, or aid him in fleeing from justice."

And the court, in the same case further said:

"Common observation and experience show that unrestricted use of motor vehicles on public streets would be extremely dangerous to life and limb and the property of the public. Their use thus becomes a fit subject for state regulation. Every person who operates or uses a motor vehicle must be regarded as exercising a privilege and not an unrestricted right. It being a privilege granted by the Legislature, a person enjoying such privilege must take it subject to all proper restrictions."

In the case of *People* v. *Rosenheimer* (1913), 209 N. Y. 115, 120, 102 N. E. 530, a very similar statute to the one in question was passed upon by the court and held to be valid, and the case of *Ex Parte Kneedler, supra,* was cited and relied upon. In the case of *People* v. *Rosenheimer, supra,* the court said:

"There is one ground upon which in my opinion, the validity of the statute can be safely placed. The legislature might prohibit altogether the use of motor vehicles upon the highways or streets of the state. It has been so held in *State* v. *Mayo* (106 Me. 62), and *Commonwealth* v. *Kingsbury* (199 Mass. 542). Doubtless the legislature could not prevent citizens from using the highways in the ordinary manner, nor would the mere fact the machine used for the movement of persons or things along the highway was novel justify its exclusion. But the right to use the highway by any person must be exercised in a mode consistent with the equal rights of others to use the highway. That the motor vehicle, on account of its size and weight, of its great power and of the great speed which it is capable of attaining, creates, unless managed by careful and competent operators, a most serious danger, both to other travelers on the highway and to the occupants of the vehicles themselves, is too clearly a matter of common knowledge to justify discussion. The fatalities caused by them are so numerous as to permit the legislature, if it deemed it wise, to wholly forbid their use. (*Otis* v. *Parker,* 187 U. S. 606; *People* v. *Persce,* 204 N. Y. 397.) If the legislature may declare it a crime to use a motor

vehicle on the highway under any circumstances, I do not see why it may not equally declare it a crime to so use such a vehicle as to injure any one in person or property that, in effect, is a diminution not an increase, of the criminality it had the power to attribute to the use of a motor vehicle. The provision now before us is but a still further diminution of the statutory inhibition the legislature would be authorized to enact. It does not declare it a crime to operate an automobile on the highway or even in its operation injury to persons or property shall be a crime, but only that failure by the operator, in case of such injury, to identify shall be criminal."

Very similar laws to the one in question have also been held valid in the following cases. *People* v. *Finley* (1915), 27 Cal. App. 291, 149 Pac. 779; *People* v. *Fodera* (1917), 33 Cal. App. 8, 164 Pac. 22; *Woods* v. *State* (1916), 15 Ala. App. 251, 73 So. 129; *Commonwealth* v. *Horsfall* (1913), 213 Mass. 232, 100 N. E. 362; *State* v. *Sterrin* (1916), 78 N. H. 220, 98 Atl. 482.

In all of the foregoing cases cited it was held that the constitutional provision that, "No person, in any criminal prosecution, shall be compelled to testify against himself," was not violated by the laws of the respective states which are practically identical with the section of our state law under consideration.

We do not think that Section 41 of Chapter 213, Acts of 1925, (as amended by Section 2, Chapter 190, ■ Acts of 1929) is in conflict with Section 14, of Article 1, of the Constitution of Indiana.

It is also contended by appellant that said Act is in conflict with Section 1, of the 13th Amendment to the Constitution of the United States in that it imposes ■ involuntary servitude and not as a punishment for crime. We do not assent to this contention of appellant. As heretofore stated in this opinion, the act is a police regulation for the promotion of the

general welfare and public good. The right of appellant to operate his automobile upon the highways and street is not an unrestricted one and the Legislature has the right to impose conditions and to regulate the use of the automobile upon the highways and streets. If, as we hold, the Legislature had the power and right to require one to render assistance and make a report of an accident, as provided in the Act, then by the same reasoning it would not be in violation of Section 1, of the 13th Amendment of the Constitution of the United States. In speaking of this Amendment, the Supreme Court of the United States in the case of *Butler* v. *Perry* (1916), 240 U. S. 328, p. 332, 36 S. Ct. Rep. 258, said:

> "This amendment was adopted with reference to conditions existing since the foundation of our Government, and the term involuntary servitude was intended to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results. It introduced no novel doctrine with respect of services always treated as exceptional, and certainly was not intended to interdict enforcement of those duties which individuals owe to the State, such as services in the army, militia, on the jury, etc. The great purpose in view was liberty under the protection of effective government, not the destruction of the latter by depriving it of essential powers."

None of the amendments to the Constitution were intended to interfere with the reasonable exercise of the police power of the State. As said in the case of *Barbier* v. *Connolly* (1885), 113 U. S. 27, p. 31, 5 S. Ct. Rep. 357:

> "But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people."

It is further contended that the Act is in conflict with Art. 1, Section 21 of the Constitution of Indiana ██ which provides that, "No man's particular service shall be demanded without just compensation."

This constitutional provision was not intended to serve as a restraint upon the exercise of the police powers of the State and the circumstance that for a time a law may inflict hardship, inconvenience, and possibly loss to an individual does not amount to a constitutional objection so long as such burdens or losses are not needlessly and unreasonably imposed, but result as an incident of a general enactment fairly designed to subserve the public welfare. If the mere fact of resulting inconvenience and loss to an established business or an individual admittedly subject to public control were sufficient to preclude control under the police power, then regulation would be practically impossible, and the most salutory and necessary power of sovereignty be seriously abridged or wholly destroyed. *State* v. *Richcreek* (1906), 167 Ind. 217, 77 N. E. 1085. We do not think the Act conflicts with Section 21, of Article 1. Nor do we think that the Act is void by reason of indefiniteness. We think any person with ordinary intelligence can understand what the Act requires him to do.

> "A court can not nullify the enactment of the legislature because the language used is indefinite in some particular, unless the purpose or intent of the legislature cannot be ascertained."

*Hunt* v. *State* (1924), 195 Ind. 585, 587, 146 N. E. 329.

It is clear what the purpose and intent of the legislature was in passing the Act and we think it is capable of intelligent construction and interpretation by persons who possess but ordinary comprehension. See *Scott*

v. *State* (1921), 90 Texas Cr. 100, 233 S. W. 1097, for a full discussion of the question under a statute very similar to the one in the instant case.

The appellant also contends that Chapter 213, of the Acts of 1925, is in conflict with Section 19, Article 4, of the Constitution of Indiana, which provides, "Every act shall embrace but one subject and matters properly connected therewith. . . ."

The title of the Act is as follows:

"AN ACT providing for the registration and licensing of motor vehicles, motor bicycles, tractors, trailers and semi-trailers, for the regulation of the use and operation thereof on the public highways, defining chauffeurs and providing for the examination and licensing thereof, the suspension and revocation of licenses, and the transfer of ownership, requiring the keeping of certain records of motor vehicles, motor bicycles and motor trucks for which storage supplies or repairs are furnished, providing that liens may be taken thereon, and prescribing penalties for the violation thereof."

It is the contention of appellant that there are two distinct subjects in the Act. One the regulation of motor vehicles upon the public highways and another granting liens to persons in certain cases.

We do not believe the Act embraces more than one subject. One of the early cases which considered this question is that of the *Indiana Central Ry. Co.* v. *Potts* (1856), 7 Ind. 681, 684. The court said:

"That the subject must be reasonably particular and not too general; for otherwise the object of the constitutional provision would be wholly thwarted. A part of the object of that provision was that the title should indicate the character of the sections of the act. To effect this object, the title must be reasonably particular; and, to secure such particularity, as a general rule, titles should not express ends, objects or purposes to be accomplished, but rather means by which ends are to be accomplished."

And in the case of *State ex rel. Test* v. *Steinwedel* (1932), 203 Ind. 457, 467, 180 N. E. 865, in discussing the foregoing statement, the court said:

"This early case recognized that the only test which this court can apply is the indefinite one of 'reasonableness,' a standard and not a specific rule of law. Section 19, Article 4, does not by restricting the contents of an 'act' to one subject, contemplate a metaphysical singleness of idea or thing, but rather that there must be some rational unity between the matters embraced in the act, the unity being found in the general purpose of the act and the practical problems of efficient administration. It is hardly necessary to suggest that matters which ordinarily would not be thought to have any common features or characteristics might, for purposes of legislative treatment, be grouped together and treated as one subject. For purposes of legislation, 'subjects' are not absolute existences to be discovered by some sort of a *priori* reasoning, but are the result of classification for convenience of treatment and for greater effectiveness in attaining the general purpose of the particular legislative act. And if, from the standpoint of legislative treatment, there is any reasonable basis for the grouping together in one 'act' of various matters, this court can not say that such matters constitute more than one subject."

The subject of the Act in question is "motor vehicles." The subject expressed in an act should be reasonably specific so as to indicate some particular branch of legislation as a head under which the particular provisions of the act might reasonably be looked for, and the generality of a title is not objectionable if it is not made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. *Sarlls* v. *State ex rel.* (1929), 201 Ind. 88, 166 N. E. 270. The provision of the Constitution here in question aims only at titles narrower than the enactment. The unnecessary breadth is ordinarily no objection to it. *Volderauer* v. *State* (1924),

195 Ind. 415, 143 N. E. 674. This constitutional provision should be given a liberal construction and not one that would embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purpose for which it was adopted. Cooley Cons't. Limitations (7th Ed.), p. 209; *Moore-Mansfield Co.* v. *Indianapolis R. Co.* (1913), 179 Ind. 356, 101 N. E. 296.

Another purpose of the constitutional provision, as said in the case of *Moore-Mansfield* v. *Indianapolis Ry. Co., supra,* "was (1) to prevent 'log rolling' legislation; (2) to prevent surprise, or fraud, in the legislature by means of provisions in bills of which the titles give no intimation, and, (3) to apprise the people of the subject of legislation under consideration." None of these objections can be raised in the instant case. The title is broad and one may know by reading it what it means and includes. It can not be said there is no rational unity between the matter embraced in the Act. The several matters embraced relate to "motor vehicles" and we believe, from the standpoint of legislative treatment, there was a reasonable basis for the grouping together of the various matters in the Act. We do not believe there is a duplicity in the title and body of the Act.

Judgement affirmed.